MERCHANTS' NATIONAL BANK *vs.* EASTERN RAILROAD COM
PANY & others.
FIRST NATIONAL BANK OF BOSTON *vs.* SAME.
NATIONAL BANK OF COMMERCE OF BOSTON *vs.* SAME.
LEMUEL SHAW & others *vs.* SAME.

Suffolk.   Jan. 24. — June 28, 1878.   ENDICOTT & LORD, JJ., did not sit.

A secured creditor of the Eastern Railroad Company is entitled, under the St. of 1876, c. 236, to a certificate of indebtedness, without first surrendering his collateral security ; but, in ascertaining the amount for which such certificate is to issue, the value of the collateral security must be first deducted ; and, if the collateral security is the bond of another corporation, guaranteed and indorsed by the Eastern Railroad Company, it is the value of such bond, without the indorsement and guaranty, which is to be applied in reduction of the debt.

A creditor of the Eastern Railroad Company, who holds its promissory note, and, as collateral security for the same, certain other notes of the corporation, is not entitled, under the St. of 1876, c. 236, to sell such collateral security and receive certificates of indebtedness for the balance due on the original note.

A person who holds certain bonds, not yet due, of another railroad corporation, payable to the order of and indorsed and guaranteed by the Eastern Railroad Company, is not entitled to the security of the mortgage made by the latter corporation to the trustees under the St. of 1876, c. 236.

FOUR BILLS IN EQUITY against the Eastern Railroad Company and the trustees of the same, appointed under the St. of 1876, *c.* 236.

The first bill alleged that the plaintiff was the holder of certain promissory notes of the Eastern Railroad Company, and held, as collateral security for the same, certain shares of the capital stock of the Pullman Palace Car Company, and certain bonds of the Portsmouth, Great Falls and Conway Railroad Company, due in 1892, with interest payable semiannually, each bond being payable to the order of and indorsed and guaranteed by the Eastern Railroad Company. The prayer of the bill was that the plaintiff might receive certificates of indebtedness for its whole debt and retain such collateral security ; or might be allowed to sell the collateral security and receive certificates for the balance. The defendants demurred, on the ground that the plaintiff was entitled to receive certificates of indebtedness only upon the surrender of the collateral security ; and for want of equity. Hearing upon the bill and demurrer, before *Ames,* J., who reserved the case for the consideration of the full court.

The second bill alleged that the plaintiff was the holder of a certain promissory note of the Eastern Railroad Company, and held, as collateral security for the same, certain other notes of the same corporation, payable ten years from date, and with interest coupons annexed. The prayer of the bill was that the plaintiff might receive certificates of indebtedness for its whole debt, and retain the coupon notes as collateral security ; or might be allowed to sell the collateral security, and take certificates for the balance. The defendants demurred on the same grounds as to the first bill. *Morton,* J., sustained the demurrer, and ordered that the bill be dismissed ; and the plaintiff appealed.

The third bill alleged that the plaintiff was the holder of certain promissory notes of the Eastern Railroad Company, and held, as collateral security for the same, certain bonds of the Portsmouth, Great Falls and Conway Railroad Company, due in 1892, each bond being payable to the order of and indorsed and guaranteed by the Eastern Railroad Company, and certain other notes of the same corporation, payable ten years from date, with

interest coupons annexed. The prayer of the bill was that the plaintiff might be allowed to sell the collateral security and receive certificates of indebtedness for the balance. The defendants demurred on the grounds assigned to the first bill. Hearing upon the bill and demurrer, before *Ames*, J., who reserved the case for the consideration of the full court.

The fourth bill alleged that the plaintiffs, as trustees, were the holders of certain bonds of the Portsmouth, Great Falls and Conway Railroad Company, due in 1892, and payable to the order of and indorsed and guaranteed by the Eastern Railroad Company; that the earnings of the Portsmouth, Great Falls and Conway Railroad Company were insufficient to pay the interest on its bonds, or to provide a fund for the payment of the principal thereof at maturity. The prayer of the bill was that the payment guaranteed by the Eastern Railroad Company might be secured by the mortgage executed by that corporation to its trustees; and for further relief. The defendants demurred for want of equity. Hearing upon the bill and demurrer, before *Morton*, J., who reserved the case for the consideration of the full court.

*R. Olney*, for the defendants, cited, in the first case, *Amory* v. *Francis*, 16 Mass. 308; *Hooker* v. *Olmstead*, 6 Pick. 481; *Middlesex Bank* v. *Minot*, 4 Met. 325; *Farnum* v. *Boutelle*, 13 Met. 159; and in the fourth case, *Washington Bank* v. *Shurtleff*, 4 Met. 30; *Mathews* v. *Aikin*, 1 Comst. 595; *Alsop* v. *Price*, 1 Doug. 160; *Ex parte Adney*, 2 Cowp. 460; *Hoffham* v. *Foudrinier*, 5 M. & S. 21.

*S. Bartlett & R. Gray*, for the Merchants' National Bank, cited *Mason* v. *Bogg*, 2 Myl. & Cr. 443; *In re Xeres Wine Shipping Co.* L. R. 3 Ch. 771; *Lewis* v. *United States*, 92 U. S. 618, 623; *Shunk's Appeal*, 2 Barr, 304; *Morris* v. *Olwine*, 22 Penn. St. 441; *Keim's Appeal*, 27 Penn. St. 42; *Miller's Appeal*, 35 Penn. St. 481; *Patten's Appeal*, 45 Penn. St. 151; *Brough's Estate*, 71 Penn. St. 460; *Graeff's Appeal*, 79 Penn. St. 146; *Moses* v. *Ranlet*, 2 N. H. 488; *Findlay* v. *Hosmer*, 2 Conn. 350; *West* v. *Bank of Rutland*, 19 Vt. 403; *Walker* v. *Baxter*, 26 Vt. 710; *Duncan* v. *Fish*, 1 Aik. 231; *Putnam* v. *Russell*, 17 Vt. 54; *Bell* v. *Fleming*, 1 Beasley 13, 26.

*E. R. Hoar & J. B. Warner*, for the National Bank of Commerce, besides some of the same cases, cited *Mason* v. *Fearson*, 9 How. 248, 259; *Supervisors* v. *United States*, 4 Wall. 435, 446; *Butz* v. *Muscatine*, 8 Wall. 575, 581; *Jerome* v. *McCarter*, 94 U. S. 734; *Ex parte Farnsworth*, 1 Lowell, 497; *Morris Canal Co.* v. *Lewis*, 1 Beasley, 323; *Royal Bank of Liverpool* v. *Grand Junction Railroad*, 100 Mass. 444.

*S. Bartlett & G. O. Shattuck*, for the First National Bank, besides some of the same cases, cited *Carter* v. *Wake*, 4 Ch. D. 605; *Fletcher* v. *Dickinson*, 7 Allen, 23; *Hancock* v. *Franklin Ins. Co.* 114 Mass. 155; *Potter* v. *Thompson*, 10 R. I. 1; *Donohoe* v. *Gamble*, 38 Cal. 340; and, for Lemuel Shaw and others, cited *McLaughlin* v. *Bank of Potomac*, 7 How. 220, 229; *Shontz* v. *Brown*, 27 Penn. St. 123.

COLT, J. No question of the jurisdiction of this court over these bills was specifically raised by the demurrers, or made at the argument. It is clear that the court has jurisdiction in some form to pass upon claims of the nature and amounts here stated; and, for reasons stated in *Third National Bank* v. *Eastern Railroad*, 122 Mass. 240, we have not thought it necessary to consider whether the remedies in these cases should have been sought through appeals from the decisions of commissioners rather than in the present form.

I. The Merchants' National Bank contends that it is either entitled to receive certificates for its full debt, and to retain for its own benefit the collateral securities held by it, or, at least, that it is entitled to certificates for the balance, after applying the collateral securities, by sale or otherwise, to its payment.

The defendants, in support of their demurrer, contend that, by the true construction of the St. of 1876, *c.* 236, the plaintiff is not entitled to certificates of indebtedness without first surrendering to the Eastern Railroad Company all collateral securities held by the plaintiff; that, as none of the creditors, secured or unsecured, are obliged to accept its provisions, the secured creditors are put to their election, either to surrender their securities and take certificates, or to retain the securities and go without the certificates. The construction contended for by the defendants is not warranted by the purposes or the terms of the act.

There are no express provisions in the act as to the extent or amount for which creditors, whose debts are partially secured, shall receive certificates. Nor are its provisions expressly confined to wholly unsecured creditors. The corporation is authorized to make a mortgage to trustees of its franchise, and of all its present and in future to be acquired property of every description, to secure its certificates of indebtedness payable in thirty years. These certificates are to be delivered by the trustees to the creditors " in exchange for its existing debts and obligations to an equal amount, as the same shall be ascertained and liquidated," under the provisions of the act. " For the purpose of ascertaining and liquidating the debts," the trustees are authorized to adjust with the creditors the amount of their several debts and claims, and to make up the same as cash to a day certain ; and it is declared that the amount " so determined " shall be the sum for which each creditor, holding such adjusted and ascertained claim, shall be entitled to receive an equal amount of certificates, " to be at any time exchanged for the existing debts and obligations of said corporation." The liabilities of the corporation upon all disputed claims, " which can be the subject of an action at law whether in contract or tort," are to be ascertained by commissioners, with a right of appeal to the courts. §§ 6–9. And, under § 9, any person holding against the company any other liability and claiming to be entitled under the St. of 1874, c. 372, § 51, to be secured under the mortgage, may apply to this court in equity, within one year from the recording of the mortgage, and have his rights established and defined. A debt secured by collateral security is the subject of an action at law within the meaning of the sections above cited, and, so far as the debtor's rights are concerned, the remedy may be pursued at common law until the debt is fully paid as if no collateral security existed. This answer to the defendants' position, in itself sufficient, is supported by the general scheme and purpose of the act.

At the time of its passage, it is apparent, without going beyond the act itself, that the Eastern Railroad Company had no present ability to pay its debts as they became due. The corporation was greatly embarrassed, if not absolutely insolvent. Its property of every description was liable to be taken, and its business wholly obstructed, by creditors. A leading purpose of the act

was to give to all the actual creditors, without regard to the nature of their claims, an equal participation in the mortgage security. It authorized the corporation, by a mortgage of all its property to trustees, to secure an extension of its debts for a period of thirty years, at a reduced rate of interest, contemplating as possible their gradual payment from future earnings and from the sale of property not needed for the use of the road. The existence of the corporation is still preserved, in the interest of the stockholders, with a view to the ultimate chance of redeeming the property. But the interest of the stockholders is necessarily subordinate to the interests of the creditors. Upon any other supposition, the scheme could hardly have been expected to obtain the coöperation of the creditors. Now, although it is not a winding-up act, nor a special bankrupt act, yet, so far as the rights of the creditors are concerned, it is an act for securing and distributing to them, if necessary, the assets of a corporation which may prove in the end insufficient to pay its debts in full; to that extent it has the features of a bankrupt act; and a strong presumption arises that all the creditors, secured and unsecured, are to be treated with entire equality, a presumption which is nowhere controlled by express provisions, and is confirmed by the clause above referred to. The construction is forced and unnatural, which would give the company the power to mortgage all its property and future earnings for the sole benefit of that class of its creditors who happened to have no secu rity for their debts, or who, having securities, were willing to surrender them to the common fund.

Upon the question of the amount for which creditors partly secured shall receive certificates, we think it clear that the amount must be limited to the remainder of the debt, after the value of the securities, ascertained as authorized by the original contract, or by the subsequent agreement of the parties, or under the supervision of the court, shall have been applied in part satisfaction. The express provisions, and the peculiar language of the act, imply that the certificate with its mortgage security is intended to be a payment and satisfaction of the debt, and to represent the creditors' exact share in the assets, after all payments, set-offs and securities have been applied. The certificate is to be delivered by the trustees to the creditor " in exchange

for its existing debts and obligations to an equal amount, as the same shall be ascertained and liquidated " under the provisions of the act. " For the purpose of ascertaining and liquidating the debts," a schedule is to be prepared by the corporation, and the trustees are to adjust with the creditors the amount of their debts, made up as cash, to a day named. The certificate is not simply new evidence of an old debt, but carries with it a certain interest in the property of the corporation. The holders have a right to participate in the present management. They elect six out of the nine directors of the corporation, each holder voting by himself or by proxy in proportion to the amount of his certificates. § 11. They choose new trustees to fill vacancies. § 12. And, in case of the absolute foreclosure of the mortgage, they are authorized to organize themselves into a new corporation, with a capital stock equal to the principal of the then outstanding mortgage debt, and to become shareholders therein. § 17. The certificate as a payment must therefore represent the actual debt, reduced by the value of the collateral security. This result conforms to the rule of equality which the statute plainly recognizes as existing between all the creditors. It is supported by the consideration that this is the rule in bankruptcy; the rule applied in this Commonwealth to the settlement of the insolvent estates of deceased persons; *Amory* v. *Francis*, 16 Mass. 308, 311; *Farnum* v. *Boutelle*, 13 Met. 159; and the rule in equity, which requires a creditor, who has two funds for the payment of his debt, as against the other creditors who have but one, to resort first to his own security, and permits him to claim against the common fund only to the extent that the security which he holds falls short. 1 Story Eq. Jur. § 633.

Both parties at the argument relied on the thirteenth section of the act in support of their respective positions. This section provides that the corporation, with the written assent of the trustees, may sell certain property not needed for the operation of the road, and apply the proceeds under the direction of the trustees " to the payment of any existing liens, mortgages or other incumbrances upon such property, or upon any bonds or notes of said corporation pledged as collateral security." It is argued from this by the plaintiff, that such collateral security is not required to be either surrendered or sold, but is to be held

by the creditor until his debt is paid and his securities redeemed; and the defendants find in it evidence that the security, if retained by the creditor and applied to his debt, would exclude him from the benefit of the general mortgage. But we think that the obvious and only purpose of the section is, to give to the corporation, with the approval of the trustees, the power to redeem mortgages and pledged property, including its choses in action, whenever it may be for its interest so to do, with a view to increasing its assets. In this aspect, the section has no important bearing upon the questions here in dispute. It is a provision for the benefit of the corporation, and not for the benefit of the secured creditor; and it is similar to the power usually given for a similar purpose to assignees of bankrupt and insolvent estates.

As to the bonds of the Portsmouth, Great Falls & Conway Railroad Company, which the Merchants' Bank holds with the indorsement and guaranty of the Eastern Railroad, it is the value of these bonds without the indorsement and guaranty which is to be applied in reduction of the debt. The conditional liability of the Eastern Railroad Company as indorser and guarantor cannot be treated as a security which can be availed of to give the bank any advantage over the other creditors. If sold or transferred to other parties under the terms of the original contract, or by the agreement of the parties, or the order of the court, the guaranty of the corporation must be first cancelled, and its indorsement so restricted that the purchaser can acquire no greater right than the bank has in this respect. This follows from the decision in *Third National Bank* v *Eastern Railroad*, above cited.

The conclusion in the case of the Merchants' Bank is, that the demurrer must be overruled.

II. The case of the First National Bank is governed by the decision in *Third National Bank* v. *Eastern Railroad*, above cited. The coupon notes are not securities which can be availed of by the creditor to give him any advantage over other creditors under the provisions of this act. Nor can the bank legally claim any additional benefit under § 13, for the reasons above stated. In this case, the decree sustaining the demurrer is affirmed, with costs.

III. The case of the National Bank of Commerce follows the decision in the above two cases. The plaintiff is entitled to a portion of the relief claimed, and the demurrer must be overruled.

IV. In the case of Shaw and others, trustees, the plaintiffs show no absolute debt, but only a contingent liability against the corporation. They are the owners of certain railroad bonds, indorsed and guaranteed by the Eastern Railroad Company. The interest on these bonds has hitherto been paid, and the bonds fall due in 1892. The plaintiffs ask the court to declare that these conditional obligations are entitled to partake of the mortgage security after and when the same shall become absolute debts, at any time before the mortgage is foreclosed and the property distributed. The act nowhere mentions contingent claims and liabilities, and nowhere declares in what manner and to what extent they shall be permitted to come in and share the benefit of the mortgage.

It is contended by the plaintiffs that the case comes within the act, because, after providing in several preceding sections for the issue of certificates for all undisputed claims, and for all disputed claims " which can be the subject of an action at law " after the same have been adjusted, it goes on in § 9 to declare that "any person claiming to hold against said corporation any other liability," and to be entitled, under the St. of 1874, or otherwise, to be secured under the mortgage, may apply by bill in equity to the court and have that liability and his rights established and defined.

But the language of § 9 does not justify the application contended for. That section evidently has reference to existing absolute liabilities which can be ascertained and enforced only in a court of equity; all other liabilities which could be enforced at law had been fully provided for. It is well settled that, without express provisions, contingent liabilities of this nature are never provable in bankruptcy or insolvency. There is no way, in law or in equity, by which persons holding such claims can secure themselves out of the property of one so liable. The reference to the St. of 1874 does not aid the plaintiffs' construction, and it is impossible to believe that the Legislature would

have omitted to provide for such cases in express terms, if such had been their intention.

In this case the demurrer must be sustained and the bill dismissed, with costs. *Decrees accordingly.*