SIOUX CITY STOCK YARDS COMPANY, Intervener and Appellant, v. A. L. FRIBOURG, as Receiver of the Union Stock Yards State Bank.

Banks: INSOLVENCY: PREFERRED CLAIMS. A preferred creditor of an insolvent bank is not entitled to have his claim paid to the exclusion of general creditors out of a fund realized from an assessment of the stockholders, under Code, sections 1882 and 1883, unless there are equities existing in his favor.

Preferred Claims: PAYMENT: DOUBLE LIABILITY FUND. Where the assets of an insolvent bank have been distributed to general creditors prior to the establishment of a preferred claim, equity will to that extent apply the proceeds of an assessment under the stockholders' double liability act to the payment of such preferred claim in preference to general claims.

Same. Where the general assets of an insolvent bank subject to the payment of preferred claims are used to defray expenses in the collection of a double liability assessment against the stockholders, to that extent the proceeds of such assessment will be applied to unpaid preferred claims to the exclusion of general creditors.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

MONDAY, OCTOBER, 12, 1903.

APPEAL from an order as to the distribution of the assets of the Union Stock Yards State Bank in the hands of a receiver.—*Reversed.*

*Hubbard & Burgess* for appellant.

*J. S. Lawrence* and *Swan & Quincy* for appellee.

McClain, J.—In 1893, in a proper proceeding, a receiver was appointed for the Union Stock Yards State Bank, who proceeded under the orders of the court to collect the assets of the bank for the purpose of distributing them among its creditors. One H. P. Chesly, receiver of a corporation known as the Union Stock Yards Company, filed a claim with the receiver of the bank in the sum of $5,246.42, which claim was subsequently assigned to the Sioux City Stock Yards Company, which is the intervener in the proceeding now before us. On the application of intervener, the court, on the 18th of July, 1898, decreed its claim to be a preferred claim, and ordered it paid as such out of any funds of the estate of the bank which might come into the receiver's hands. In the meantime other preferred claims had been allowed and paid out of the general assets of the bank, and, as the assets after the payment of these preferred claims were not sufficient to pay the claims of general creditors, a fifty per cent. assessment on stockholders on account of their double liability was made (see *State v. Union Stock Yards State Bank*, 103 Iowa, 549), the proceeds of which, coming into the hands of the receiver from 1895 down to the date of the trial in the lower court, amounted to about $26,000, of which the receiver at the time of the trial had on hand $5,673.65. At that time the receiver had on hand only $10, derived from the general assets of the bank. The present controversy arises on an application of the intervener, the Sioux City Stock Yards Company, to have the total amount in the hands of the receiver, all of which, as already stated (with the exception of $10), had been derived from assessments on stockholders, applied to the payment of intervener's preferred claim. This application was re-

sisted by the receiver, and also by general creditors, on the ground that the fund derived from the assessment on stockholders, which was made under chapter 208 of Acts of the 18th General Assembly, now embodied in its substantial provisions in Code, sections 1882, 1883, was not applicable to the payment of preferred claims. But the court refused this application, and ordered the amount in the hands of the receiver, so far as it was derived from the assessment on stockholders, to be applied *pro rata* to the claims of all the creditors of the bank, including the claim of intervener, after deducting the entire expense of the receivership, and it is from this order that the intervener appeals.

As a general proposition, the contention of the receiver and the general creditors as against the claim of intervener to a preference in the distribution of the pro-

1. BANKS: insolvency: preferred claims.

ceeds of the assessments on stockholders would seem to be sound. A creditor who is given a preference in the distribution of the assets of a bank, on the ground that the fund which he claims as a trust fund was wrongfully received by the officers of the bank, and should be returned to him before the assets are used in the payment of general creditors, is given such preference because the trust fund has swelled the general assets, and the creditors of the bank will not be deprived of anything to which they are entitled, if, to the extent to which the general assets have been increased by including the trust fund, they are in turn diminished by the return of such fund to the beneficiary entitled thereto. But where the trust fund has been diverted or squandered, and the assets have not been in any way derived from or swelled by it, then a beneficiary is in no situation to ask that the funds of the bank be diverted from the payment of general creditors and applied to the return of the trust fund. *Jones v. Chesebrough*, 105 Iowa, 303; *Bradley v. Chesebrough*, 111 Iowa, 126.

Whether the beneficiary of a trust fund wrongfully received by the bank could, as a creditor, compel an assessment on stockholders under the double liability act, for the purpose of raising money to pay off his claim, is not a question which we now have before us.   The trial court put the intervener on the same basis as other creditors as to distribution of the proceeds of the stockholders' double liability, and its action in doing so is not questioned. 'But the point we are now considering is whether the preferred creditor is entitled to a preference in the distribution of such proceeds, and we are clearly of the opinion that he is not entitled to any such preference. His preference is as to the assets of the bank which have been swelled by the trust fund; but, those assets having disappeared or been distributed, it cannot be claimed that the assets derived from the assessment on stockholders have in any way been augmented by the trust fund, and therefore it certainly is not subject to diminution in the interest of a preferred creditor.   Moreover, the provisions of the statute are specific that the fund derived from the assessment of stockholders "shall be distributed equally among all the creditors of such corporation in proportion to the amount due to each."   See Acts 18th Gen. Assem. page 206, chapter 208, section 2.   Code, section 1883, contains substantially the same provision. Nor is there anything in the order of the court of July 18, 1898, establishing intervener's claim as a preferred claim, inconsistent with this conclusion; for in that order it is provided that the receiver shall pay intervener's claim "out of any funds of said estate remaining in his hands and applicable thereto."   If the proceeds of the assessment on stockholders is not applicable to the payment of preferred claims, then the order of court did not direct the application of the proceeds of such assessment to the satisfaction of such preferred claim, to the exclusion of the claims of other creditors.   Unless, therefore, there are some other

facts in this case which should influence a court of equity in regard to the distribution of the fund in the hands of the receiver, the order of the lower court denying intervener's application to preference as to such funds is correct.

If, however, prior to the order establishing intervener's claim as entitled to preference, assets of the bank which should have been applied to the satisfaction of intervener's preferred claim had been distributed to general creditors, then undoubtedly to that extent the proceeds of the stockholders' double liability, which would otherwise be distributed to general creditors, might be now applied to the satisfaction of intervener's preferred claim, for no ultimate injustice would thereby be done to the general creditors. They would receive in the aggregate what they were entitled to, and the equity of the intervener would be protected. *Standard Oil Co. v. Hawkins*, 74 Fed. Rep. 395 (20 C. C. A. 468, 33 L. R. A. 739).

2. PREFERRED claims: payment: double liability fund.

Moreover, if general assets of the bank were used in the satisfaction of other preferred claims which should have been applied *pro rata* on the claims of such preferred creditors and intervener, then, to the extent to which such other preferred creditors may still be entitled, if at all, to share as general creditors in the proceeds of the stockholders' double liability, the amount coming to such other preferred creditors might no doubt be used for the purpose of equalizing payments as between such other preferred creditors and the intervener. The difficulty in applying any such rules of distribution in this case seems to be that the general assets of the bank, so far as they were used in the extinguishment of the claims of creditors, were entirely exhausted in the payment of preferred claims established before that of the intervener was recognized as entitled to preference, and that such other preferred claims have, as we understand the record, been fully paid, so that the other preferred creditors now have

no claim as general creditors to participate in the distribution of the proceeds derived from the assessment on stockholders under their double liability.

But the final and substantial claim of counsel for intervener is that a considerable portion of the amount of the general assets of the bank, which would have been applica-
3. SAME.       ble to the payment of intervener's preferred claim, was used in the expenses of the administration of the receivership, that these expenses have been incurred very largely in the collection of the assessment on stockholders on account of their double liability, and that to the extent to which the general assets applicable to the payment of intervener's preferred claim have been used in the collection of the assessment on stockholders the proceeds of the stockholders' double liability should be now applied to the satisfaction of intervener's claim in preference to the claims of general creditors.   This contention we think to be sound and in accordance with equitable principles. The difficulty is that we have no means on this record of determining to what extent the expenses of the administration of the receivership, so far as they have already been allowed and paid out of the general assets, have been occasioned by the collection of the stockholders' assessment.   We think it clearly appears, however, that some considerable portion of the expenses of administration incurred in the collection of the assessment on stockholders has been included in the expenses of the receivership allowed out of the general assets.   It appears that out of $26,585.17 derived from various sources as general assets of the bank the sum of $11,249.60 has been paid out to preferred creditors, and the balance has been entirely exhausted (save $10 of that fund, now in the hands of the receiver) in the expenses of administration.   On the other hand, out of $26,019.03 derived from assessments on the stockholders the sum of $4,280.95 has been used in the payment of preferred claims (other than the claim of

intervener, on which no payment has been made and a balance of $5,673.65 remained in the hands of the receiver, the whole fund, with this exception, having been exhausted in the payment of expenses of administration. In other words, out of the total of $52,604.20 which has come into the hands of the receiver, over $30,000 has been expended in administration of the receivership, and something over $20,000 has been paid out to creditors, or is still on hand to be used for that purpose. We, of course, have nothing in the record to directly indicate that the expenditure of three-fifths of the estate in carrying on the receivership, and two-fifths in the payment of claims, is extravagant; but we think it may be fairly surmised, at any rate, that some portion of the expenses paid out of the general assets has been made necessary by the proceedings to enforce liability of stockholders. If the trial court had required the receiver to distinguish in his report between expenses thus incurred and those which would have been necessary in the distribution of the general assets without resorting to an assessment on the stockholders, it might have been shown that a considerable amount of the receivership expenses paid out of the general assets had been incurred in the enforcement of the assessment. Such a finding by the trial court, though not specifically asked by the intervener, would have been within the equitable relief which he sought, and we think the trial court should have given him the benefit thereof. We have no means of knowing whether such equitable considerations were brought to the attention of the trial court, and urged on the hearing; but, if the intervener was entitled to this relief, we see no reason why he should not have it, either in this court or in the lower court. As we have not the means, however, of apportioning the expenses of administration between the two funds, we shall remand the case to the lower court, with direction that the amount of general assets used in expenses of administration incurred in col-

lecting the stockholders' liability be ascertained, and that to a corresponding amount the proceeds of the stockholders' assessment, now in the hands of the receiver, or hereafter derived by him from that source, be applied to the satisfaction of intervener's preferred claim, and the order of the lower court appealed from is REVERSED.