REICHERT *v.* FIDELITY BANK & TRUST CO.

1. BANKS AND BANKING—ALLOCATION OF STOCKHOLDERS' LIABILITY FUND.

   Where trust company had right to do savings and commercial banking business, proceeds collected by receivers from stockholders under their statutory liability should be allocated in proportion to allocation of capital stock between trust department and banking department (3 Comp. Laws 1929, § 12019); and portion collected and allotted to banking branch should be apportioned between commercial and savings departments in proportion to amount of claims filed and allowed in each department.

2. SAME—INSOLVENCY—PREFERENCES—TRUSTS.

   Generally, more equitable distribution of assets of insolvent bank or trust company will be accomplished if preferences and priorities are avoided except in instances provided by law or created by agreements and circumstances under which insolvent received particular funds.

3. SAME—PRIORITY OF CLAIMS.

   Preferred claims in any department arising under bank collection code (Act No. 240, Pub. Acts 1931) have priority in payment out of any assets of that department, including money derived from enforced stockholders' liability, but aside from said statutory preference, funds received by any department from enforced stockholders' liability should be used in paying general claims allowed in that department, and any unpaid portion of trust or preferred claims should share *pro rata* with general claims in assets of respective departments.

4. SAME—PREFERRED CLAIMS ARISING UNDER BANK COLLECTION CODE.

   In paying claims designated as preferred under bank collection code, department should not use funds or assets belonging to another department.

5. Same—Statutory Preferred Claims Not Payable Out of Specific Trust Funds.

In designating claim as preferred under Act No. 240, Pub. Acts 1931, regardless of whether it can be traced among assets of bank, legislature obviously intended to give it first preference payable out of general assets, but not out of specific and identified trust funds in hands of bank, which both in fact and in law are not part of its assets.

6. Same—Assets of Trust and Banking Departments to be Segregated.

Claims designated as preferred under said bank 'collection code (which could arise only within scope of banking business) may not be paid out of assets belonging to trust and/or savings departments, since statute contemplates segregation of assets of trust business from those of banking business, and assets of savings department from those of commercial department (3 Comp. Laws 1929, §§ 11928, 12019).

7. Same—Preferred Claims—Actual or Constructive Trusts.

Claims preferred by reason of actual or constructive trust relationship (not arising under said bank collection code), where funds cannot be traced into specific assets except by legal conclusion, should not share ratably with claims proved and allowed under said act in cash on hand at time of closing, where said cash is less than total amount of preferred claims.

8. Same—Priority of Claims—Cash on Hand—Trusts—General Claims.

Claims allowed preference because funds were deposited as trust funds, either actual or constructive, which cannot be traced into tangible assets except by legal construction, and where cash on hand at time of closing is less than total amount of such claims, may not share *pro rata* in cash on hand before general claims.

9. Same—Trust Claims Payable Out of Funds Allocated to Trust Department Only.

Preferred claims against trust department arising out of actual or constructive trust relations may not share in assets of insolvent except those allocated to its trust department, unless there should be assets left in banking department after paying all claims against that department in full (3 Comp. Laws 1929, § 12019).

10. SAME—TRUST EX MALEFICIO INCLUDED WITH OTHER TRUSTS.

In fixing amount of trust claims in particular department, there should be included all trusts *ex maleficio* and any other trusts as to which fund cannot be traced or identified.

11. SAME—CLAIM ARISING OUT OF TRUST EX MALEFICIO—ORDER OF PAYMENT.

Where amount of cash in or allocated to commercial department is less than total of trust claims allowed in that department, city is not entitled to preference in payment of its claim arising out of trust *ex maleficio* over other trust claims, none of which can be traced into specific funds or cash on hand, but city's claim must be treated as liability of department payable *pro rata* with its other common claims (3 Comp. Laws 1929, § 12019).

12. SAME—WHEN TRUST EX MALEFICIO PREFERRED.

As against claims of ordinary creditors in commercial department, city is entitled to preference in payment of its claim arising out of trust *ex maleficio*, if all preferred claims in that department can be paid from cash on hand; but as against other trust claims in same department, or any claim in another department, city is not entitled to preference.

Certified questions from Wayne; Hunt (Ormond F.), J. Submitted October 25, 1932. (Calendar Nos. 36,707, 36,904.) Decided December 7, 1932.

Receivership proceedings by Rudolph E. Reichert, State banking commissioner, against Fidelity Bank & Trust Company, a Michigan corporation. Questions relating to allocation of assets and rights as to preferences certified to this court. Answered and remanded.

*Beaumont, Smith & Harris, Nathaniel H. Goldstick,* and *Paul J. Wieselberg,* for receivers.

*Yerkes, Goddard & McClintock* and *Bulkley, Ledyard, Dickinson & Wright (Frank W. Donovan,* of counsel), for Union Guardian Trust Company and Equitable Trust Company, as successor-trustees, claimants.

*Paul T. Dwyer* and *John Atkinson,* Assistants Corporation Counsel (*Clarence E. Wilcox,* of counsel), for City of Detroit, claimant.

NORTH, J. The Fidelity Bank & Trust Company is a Michigan corporation and prior to its insolvency it carried on a trust business and also a banking business, both commercial and savings. Because of insolvency it ceased doing business October 7, 1931, and receivers were appointed. Prior to the time of closing it acted in various trust capacities and received large sums of money incident to its trust business. It served as administrator of estates of deceased persons, as executor and trustee under testamentary instruments, and as guardian of various estates under orders of probate courts. Its trust department also had on deposit various sums of money with which to meet maturing obligations of coupons and bonds under trust mortgages and for other specific purposes of somewhat similar character. It also held other funds commonly denominated living trusts. In its banking departments it carried on the regular and usual business transactions incident to commercial and savings banks. In closing up the affairs of this insolvent corporation the receivers have been directed to enforce the statutory stockholders' liability (3 Comp. Laws 1929, §§ 11945, 12024); and the receivers have already made partial collection from the stockholders. For their guidance in making distribution of the money received incident to the enforcement of the stockholders' liability and of other assets of the bank, the receivers have caused the certified questions hereinafter discussed to be submitted to this court. We forego a more detailed statement of the facts and circumstances involved, except as the same

may appear incident to disposition of the questions submitted.

*Question 1.* Where a fund has been collected from stockholders in payment of their statutory liability, and the stock was the stock of a trust company having a right to do a savings bank business and a commercial banking business, should such funds be allocated between the three departments? If so, should they be allocated in proportion to the amount of claims allowed against each of said departments?

In answer to the above question, as in most instances hereinafter, we are able to adopt the proposed answer of the receivers' attorneys. The proceeds collected from the stockholders' liability should be allocated in proportion to the allocation of the capital stock between the trust department and the banking department. In so holding we are simply following either the express or necessarily implied provisions of 3 Comp. Laws 1929, § 12019. And the portion of the stockholders' liability collected and allotted to the banking branch should be apportioned between the commercial and savings departments in proportion to the amount of the claims filed and allowed in each department. Such apportionment is in accordance with our holding in *Reichert* v. *Farmers', etc., Sav. Bank,* 257 Mich. 500.

*Question 2.* Where a fund has been collected by the receivers from stockholders in payment of stockholders' liability, can this fund be used in payment of any of the insolvent's liability except dividends on general claims against the department to which such fund or any portion thereof is allocated; or may such fund also be used in the payment of preferred claims constituting a lien upon all the assets of that department?

We think it may be accepted as a general proposition that a more equitable distribution of the assets of an insolvent bank or trust company will be accomplished if preferences and priorities are avoided except in instances provided by law or created by the agreements and circumstances under which the insolvent received the particular funds. However, it is obvious that preferred claims in any department arising under Act No. 240, Pub. Acts 1931 (bank collection code), by reason of that statutory provision have priority in payment out of any assets of that department, including money derived from enforced stockholders' liability. See answer to question 3. But aside from this statutory preference, the funds received by any department from enforced stockholders' liability should be used in paying general claims allowed in that department. If, however, there are trust or preferred claims unpaid in whole or in part, the unpaid portion of such claims should share *pro rata* with general claims in the assets of the respective departments.

*Question 3.* Where claims have been allowed as special preferred claims under Act No. 240, Pub. Acts 1931, should these claims be paid in full out of the most immediately available assets?

Act No. 240, § 13, provides that funds in the hands of an insolvent bank of which it has come into actual or constructive possession by reason of its having acted incident to the collection of forwarded commercial paper shall be impressed with a trust in favor of the drawee or payor, and further, that:

"The assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled

to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.''

The statutory provision necessitates the answer that the amount due from the insolvent for such items is a primary obligation and should be paid, but in making such payment a department should not use funds or assets belonging to another department of the insolvent. In designating such an item as a ''preferred claim'' regardless of whether it can be traced among the assets of the bank, the legislature obviously intended to give it a first preference payable out of the general assets of the insolvent; but, of course, not out of specific and identified trust funds in the hands of the insolvent which both in fact and in law are not a part of its assets.

*Question 4.* Claims allowed under said Act No. 240, Pub. Acts 1931, being payable out of all the assets of the bank, do these assets so referred to include assets belonging to the trust and/or savings department of the Fidelity Bank & Trust Company?

The answer is, No. This answer to the foregoing question is included in answer to question 3; and is controlled by 3 Comp. Laws 1929, § 12019. This section necessitates entire segregation of the trust business from the banking business of the corporation; and when so conducted a claim of this character could not rise against the trust department, because it is obviously within the scope of its banking business. It is likewise true that the statute (3 Comp. Laws 1929, § 11928) contemplates segregation of the assets of the savings department of the bank from those of its commercial department. See *Reichert* v. *Farmers', etc., Sav. Bank, supra.*

This could not be accomplished except by limiting the payment of claims under Act No. 240 in the manner above indicated.

*Question 5.* Where claims have been proved and allowed as preferred by reason of an actual or constructive trust relationship, but not under said Act No. 240, Pub. Acts 1931, should these claimants, in the absence of ability to trace their funds into specific assets in the hands of the insolvent, except by legal construction, share ratably with claims proved and allowed under said Act No. 240 in the cash on hand at the time of closing, so that claims allowed under said Act No. 240 are paid as to their deficiency out of other assets?

This question must be answered in the negative, because under the facts in this case, as pointed out in the answer to question 6, no preference can be given to any claim arising out of an actual or constructive trust relationship, except those under Act No. 240.

*Question 6.* Where claims are allowed as having a preference because funds were deposited with the insolvent as trust funds, either actual or constructive, which trust funds cannot be traced into any tangible assets unless by legal construction, and where the cash on hand at the time of closing is less than the total amount of such preferred claims, should these claims share *pro rata* in the cash on hand before general claims?

The answer is, No. A claim asserted on the theory that funds were placed in the hands of the insolvent in trust, either actual or constructive, cannot be successfully maintained as a preferred claim unless (1) such deposit or the proceeds of the insolvent thereof can be traced and identified in the hands of the insolvent; or unless (2) from and after

the commingling of such funds with the general cash of the insolvent the amount of cash on hand until cessation of business continued to be equal to or in excess of the aggregate of the untraceable trust claims asserted. *American Employers Ins. Co.* v. *Maynard,* 247 Mich. 638; *Reichert* v. *United Savings Bank,* 255 Mich. 685. The assumption embodied in the question excludes compliance with the first condition and the facts disclosed by the record are conclusive of noncompliance with the second.

*Question 7.*  Do preferred claims arising out of actual or constructive trust relations incident to dealings with the trust department of the insolvent where the trust relationships were established share in the assets of the insolvent except those allocated to its trust department?

They do not. This is clear from the provisions of the statute (3 Comp. Laws 1929, § 12019). An exception to the foregoing answer would occur in case the banking department of the insolvent corporation should have assets left after paying all claims against that department in full.

Certified question 8 is eliminated by the answer to question 7.

*Question 9.*  Where a trust company authorized by law to do a trust and general banking business has illegally received a deposit from the city of Detroit, amounting to $100,000, in its commercial department, such illegality arising from its failure to give a bond contrary to the ordinances of the city of Detroit, and it being admitted that a trust *ex maleficio* arose from such transaction, and where such trust company in the course of its trust business received deposits under various forms of trusts established by agreement, under which claims were proved and allowed in an amount of upwards of

$1,204,611.92, and where at the time of the suspension of such trust company the total cash on hand amounted to $123,480.93, and it is impossible for the said city of Detroit on the one hand, or any of the other trust claimants on the other hand, to trace the specific funds which formed the basis of their said claims into said cash on hand, and the said $123,480.93 was the total cash on hand available to meet withdrawals of deposits in the general savings and commercial departments, as well as the trust department, has the city of Detroit any claim of preference or right against said fund of $123,480.93 superior to the claim of any other trust claimant allowed as preferred in the total sum of $1,208,223.35, none of which were illegal deposits by municipal or State authorities?

The city's claim arises out of an unlawful deposit in the commercial banking department of the insolvent. This deposit was made in violation of law and a trust *ex maleficio* resulted. The city's claim is against the commercial banking department of the Fidelity Bank & Trust Company. Since the city's deposit cannot be traced or identified, the payment of its claim on the trust fund theory can be ordered only in the event it is established that from the date of deposit (September 25, 1931) to the date of closing (October 7, 1931) the commercial banking department had on hand or on deposit cash in an amount at least equal to the total of the city's claim and other trust claims entitled to a like preference in the commercial department. *Reichert* v. *United Savings Bank, supra.* In fixing the amount of such trust claims in the particular department, there should be included all trusts *ex maleficio* and any other trusts as to which the fund cannot be traced or identified. The amount of such preferred claims allowed against the commercial banking department of this insolvent is $114,431.10,

including this claim of the city of Detroit. The total amount of cash on hand in all three departments of this corporation when it ceased doing business was $123,480.93. From the record before us we cannot determine the exact amount of cash allocated to the commercial banking department; but we think it conclusively appears from this record that on the date of closing the amount of cash in or allocated to the commercial banking department was less than the total of trust claims allowed in that department. It follows that under the circumstances the city of Detroit is not entitled to a preference in the payment of its claim on the trust fund theory. *American Employers Ins. Co.* v. *Maynard, supra.* The city's claim must be treated as a liability of the commercial department of the bank payable *pro rata* with its other common claims.

In its brief the city asserts that it is entitled to priority against other trust claims because it has the only preferred claim arising from a trust *ex maleficio.* All other trusts with which the insolvent is charged resulted from the nature of the transaction by which it became possessed of the funds, and are either express or implied trusts. No authority has been cited to us, nor have we found any, in which it is held that, in cases where the specific fund is not traced, a claim arising incident to a trust *ex maleficio* is preferred to one arising from an express or implied trust. We think upon the equitable principle of attaining so far as possible a ratable distribution of the insolvent's assets, such a preference should not be granted. It is also contended in the city's brief that because its claim resulted from the unlawful deposit of public funds it should have a "special preference and should be given priority over all other claimants of the bank and more particularly as against the preferred claimants

arising out of the trust department.'' Obviously this contention of the city that its claim should have ''preference or priority as against all of the assets of the bank'' (which from the context of the city's brief evidently means against all of the assets of the insolvent) is in direct conflict with and violation of the statutory provision (3 Comp. Laws 1929, § 12019) which requires separation of the assets and liabilities of the respective departments of the insolvent. As against claims of ordinary creditors in a given department, in this instance the commercial banking department, a trust claimant such as the city clearly is entitled to a preference if its claim can be paid from cash on hand. *Reichert* v. *United Savings Bank, supra.* But as against other trust claims in the same department or as against any claim in another·department, the city is not entitled to a preference.

Case remanded to the circuit court. No costs awarded.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.