## HODGELL v. WILDE, STATE EXAMINER

(No. 2027; December 23, 1937; 74 Pac. (2d) 336)

For the appellant, there was a brief and oral argument by *Bard Ferrall* of Cheyenne.

There was no appearance for respondent.

RINER, Justice.

This litigation arose in consequence of a disagreement between a savings depositor in a Wyoming state banking institution conducting both a savings department and a commercial department business, which subsequently became insolvent, and the State Examiner as the statutory liquidating officer, concerning the right of said depositor to share in certain funds obtained and to be obtained from the enforcement of a stockholders' statutory liability in the course of the administration of the insolvent bank. The district court of Albany County, in which the case was tried to the court without a jury, rendered a declaratory judgment in favor of William J. Hodgell, the depositor, who had instituted the action as plaintiff to have his rights to share in said funds determined. The State Examiner, as defendant, has brought the record here for review by direct appeal.

There was evidence taken on the trial of the issues

made up in the action, and the district court aforesaid made a general finding in favor of the plaintiff and also certain special findings of fact. Inasmuch as no transcript of the evidence appears in the record, we must assume that these findings are upheld by the evidence submitted to the trier of fact. Luman v. Hill, 36 Wyo. 48, 252 Pac. 1019; Foster v. Fremont Natural Gas Co., 36 Wyo. 436, 256 Pac. 665; Royal Insurance Co. v. O. L. Walker Lumber Co., 23 Wyo. 264, 148 Pac. 340. There remains, therefore, only the question whether the legal consequences ensuing from these findings as adjudged by the district court are correct. Summarized the facts thus found are as follows:

The defendant, A. E. Wilde, is and at all times since March 31, 1933, has been the State Examiner of this state, his immediate predecessors in office being John A. Reed, during the period April 27, 1932, to October 1, 1932, and William Reeves, Jr., from October 1, 1932, to April 1, 1933. The First State Bank of Laramie, a banking corporation incorporated and organized under the laws of the State of Wyoming, was engaged in that business in the city of Laramie, Albany County, Wyoming, during all these periods and until April 27, 1932. On the date last mentioned this institution was found to be insolvent by the State Examiner, and he thereupon took charge of it for the purpose of liquidation. He has been in control of its property and affairs ever since.

This bank on and prior to April 27, 1932, under the provisions of Section 10-130 W. R. S., 1931, operated a savings department and also what is commonly known as a "commercial department." The plaintiff at the time the bank passed into the control of the State Examiner was not indebted to, but was a depositor in and had an account in said bank in its savings department, in the amount of $342.95, which, upon claim being filed therefor in due course, was approved in the

liquidation proceedings as a savings deposit claim, for that amount.

All the claims of every description against said bank allowed by the State Examiner amount to the sum of $641,593.72. Of this total amount the sum of $216,-379.15 represented "preferred or secured claims or claims paid by offset," which were paid in full, $7,500.26 of the claims of this character arising in the savings department and $208,878.89 being chargeable to the commercial department of the bank. The remaining or unsecured claims for savings department deposits, in which the plaintiff's claim was listed, amount to $178,674.47, and those of this character for the commercial department total the sum of $246,-540.10.

The sum of $171.45 has been paid the plaintiff on his claim through declared dividends, or approximately fifty per cent thereof, and there is now due him the sum of $171.50. Each creditor of said bank holding an approved claim in said savings department has been paid a similar percentage. On the unsecured commercial deposit claims, however, dividends totaling but thirty per centum have thus far been paid.

As required by Section 10-130, supra, the institution as a going concern had kept separate books for its different departments and had kept the funds deposited by savings department depositors separate from the other funds and investments of the bank, and the dividends heretofore paid these depositors were paid solely from funds derived from the liquidation of the savings department assets. The value of the assets of the savings department in the hands of the State Examiner and undistributed does not exceed the sum of $19,000.00, so that when they are all liquidated and disbursed the savings depositors will not receive therefrom dividends totaling more than sixty per cent of the face of their claims. The plaintiff will accordingly re-

ceive as his share of such dividends a sum not to exceed $205.77.

The remaining assets of the bank, excluding the savings department assets and the statutory stockholders' liability presently to be mentioned, do not exceed $30,000.00, and hence the total dividends which will be paid each creditor holding an approved unsecured claim against said bank's commercial department will not exceed forty-two per centum thereof.

The insolvent institution had an authorized capital of $100,000, represented by one thousand shares of capital stock of the par value of $100.00 for each share. Due to the insufficiency of the assets of the bank which have come into the hands of the State Examiner, it will be necessary to demand payment in full of the statutory stockholders' liability from each stockholder of said bank, which liability amounts to $100.00 per share. Even if this liability is liquidated in full, the sum thus realized, together with the other assets of the bank, will be insufficient to pay the bank's creditors in full. Suits have been brought and are pending to collect the statutory stockholders' liability, and the sum of $36,864.47 has already been collected by the State Examiner from that source, and he now has that amount in his hands.

The plaintiff has demanded that the State Examiner aforesaid pay forty-two per centum of the amount thus collected, or which may hereafter be collected from the statutory liability of the bank's stockholders upon the unsecured savings department claims, totaling $178,-674.47, as above stated, and that the balance, or fifty-eight per cent thereof, be paid upon said unsecured commercial department claims, totaling $246,540.10, for the reason that the unsecured savings department claims comprise forty-two per cent of all the allowed and unpaid claims against said bank. This the State Examiner has refused to do, but intends, unless re-

strained by the judgment of the district court, to pay all the sums collected by reason of said stockholders' liability only upon claims arising against the bank's commercial department, it having been theretofore the practice of the various State Examiners of the State of Wyoming in their construction of the banking laws of this state to pay all sums collected by reason of the liability aforesaid in insolvent banks in this jurisdiction upon the claims of the commercial department creditors only.

The district court concluded and in accordance therewith adjudged that the defendant State Examiner should apply and pay forty-two per cent of the amount realized from said stockholders' liability upon approved savings department claims not paid in full from the assets of that department, said sum to be paid pro rata upon these claims, provided that no more of said forty-two per centum of said sum should be used than might be required to pay said claims in full after "all the assets of said savings department have been liquidated and paid upon said claims." Fifty-eight per centum of the stockholders' liability collections was also adjudged to be paid in like manner to the approved and unpaid commercial department creditors. The expenses of liquidating the bank were adjudged to be paid forty-two per cent from the savings department assets and fifty-eight per cent from the commercial department assets.

Section 10-130, W. R. S. 1931, mentioned above, reads:

"Any bank or trust company organized under the laws of this state may operate a savings department in connection therewith; provided, that every bank or trust company which maintains a savings department or solicits or receives deposits as savings, shall keep separate books of account for each kind of business. Such bank or trust company may invest 90 per cent. of such deposits in the bonds of this state, or in the bonds of the United States or in Farm Loan Bonds issued by

any Federal Land Bank or joint stock Land Bank organized under an Act of Congress approved July 17, 1916, entitled 'An Act to provide capital for agricultural development' and known as the 'Federal Farm Loan Act' and acts amendatory thereto, or in the bonds of any city, county, town or school district in the state legally authorized to issue said bonds or loan the same upon the notes or bonds secured by a mortgage or trust deed upon unincumbered real estate, or chattels worth at least double the amount loaned; Provided, further, that all investments relating to the savings department shall be kept entirely separate and apart from the other business of the bank, that such portion of said savings deposits as are on hand unloaned or deposited with other banks and the investments made with the funds deposited by savings depositors shall be held solely by such bank or trust company for the payment of depositors of said funds."

This statute was amended and re-enacted by the State Legislature, the law being approved by the Executive February 21, 1933, in this form:

"Any bank or trust company organized under the laws of this State may operate a savings department in connection therewith; provided, that every bank or trust company which maintains a savings department or solicits, or receives deposits as savings, must retain 10% of such deposits as cash reserve on hand in said bank or trust company, or due from reserve agents approved by the State Examiner."

We do not understand that any contention is made or can be made that the reformed statute controls the disposition of the matter at bar, except as it may indicate by way of argument a changed view on the part of the law-making authority of the state relative to the respective rights of savings depositors and commercial depositors in a bank having both departments.

Section 10-508, W. R. S. 1931, creates and supplies the procedure for the enforcement of the statutory stockholders' liability in insolvent banking institutions

repeatedly referred to above. The first sentence of that section reads as follows:

"The shareholders of each and every banking association, savings bank and loan and trust company or association, organized under the provisions of this Act shall be held individually responsible, equally and ratably and not one for another, to the extent of the amount of their stock therein at the par value thereof, and such liability shall be deemed an asset of the insolvent bank, and upon insolvency shall become due and payable."

After vesting the "sole right of action" for collecting such liability in the State Examiner and defining who shall be regarded as shareholders subject thereto, the section continues: "Whenever any banking corporation shall become insolvent and its assets and affairs have been taken possession of by the State Examiner pursuant to this Act and the State Examiner shall be of the opinion that it will become necessary in the course of the liquidation of such bank, to resort to the liability of the shareholders as herein provided for in order to make good the contracts, debts or engagements of such bank, it shall be lawful for and shall be the duty of the State Examiner to" follow the procedure detailed in the remaining portion of the section.

From the quoted language of the statute it is apparent that the funds derived from the enforcement of this stockholders' liability are assets of the failed institution and are required to be used "to make good the contracts, debts or engagements" thereof. There is no statutory qualification of this language, and we must conclude, as did the district court, that the fund collected by the State Examiner from this statutory stockholders' liability is one to which, as general assets of the failed institution, both the savings depositors and the commercial depositors in the concern as creditors

thereof have a right to look in common for the payment of its engagements and debts to them.

We think it true, as pointed out by the Supreme Court of Iowa in Andrew, State Superintendent of Banking, v. Bevington Savings Bank et al., 206 Iowa 869, 221 N. W. 668, relative to a receiver's certificate of indebtedness, under a statute resembling Section 10-508, supra, that:

"Undoubtedly, this statutory stockholders' liability is not an asset of the bank in the sense that the officers or managing board thereof can handle or in any way use or appropriate it. Yet the assessment arising out of such responsibility is a 'source" available to the receiver for the payment of corporation debts. Necessarily, therefore, it constitutes and is an asset in his hands, within the meaning of the certificate."

In this connection we are reminded by appellant of the rule for the judicial interpretation of statutes, which declares that the construction given a law over a long period of time by the department or officer charged with its administration should be assigned great weight, and, as the district court found that previous State Examiners have interpreted the law as requiring "all of the sums collected by reason of stockholder liability of the shareholders of such banks shall be paid upon claims of the commercial department creditors only," this should be the construction given the law here. But the principle suggested is only applicable when the executive construction of the statute is not clearly erroneous. State ex rel. Murane v. Jack, (Wyo.) 70 Pac. (2d) 888; State ex rel. Goshen Irrigation District v. Hunt, 49 Wyo. 497, 57 Pac. (2d) 793; State ex rel. Cross v. Board of Land Commissioners, 50 Wyo. 181, 58 Pac. (2d) 423. We are constrained to say that in our judgment the clear language of the statute involved is so specific in directing the funds derived from the liability aforesaid to be used to "make

good the contracts, debts or engagements" of the institution that the conclusion announced above is the only one possible without doing violence to its plain meaning.

It will be observed that the liquidation of the insolvent bank involved herein has progressed to the point where it is established with reasonable certainty just what percentage of their respective claims the creditors of the savings department and those of the commercial department thereof have received and will receive from the collected assets of the institution, exclusive of the funds derived from the stockholders' liability. The right here claimed by the respondent as a savings depositor is nothing more than the right to share in the funds derived and to be derived from that liability on the relative percentage basis with the creditors of the commercial department, which it appears the district court saw fit to adopt.

The precise question remaining to be determined then is—What rule should be employed in the distribution of the funds thus obtained from the stockholders' statutory liability to the several claims of the creditors of the savings department and those of the commercial department?

As we have seen, the district court in its calculation of the percentage basis which should be applied for this purpose has subtracted and laid aside the preferred claims chargeable against each of these departments. In this we think the ruling was correct. The principle underlying the allowance of preferred claims is stated thus in Sioux City Stock Yards Co. v. Fribourg, Receiver, 121 Iowa 230, 96 N. W. 747:

"A creditor who is given a preference in the distribution of the assets of a bank, on the ground that the fund which he claims as a trust fund was wrongfully received by the officers of the bank, and should be returned to him before the assets are used in the pay-

ment of general creditors, is given such preference because the trust fund has swelled the general assets, and the creditors of the bank will not be deprived of anything to which they are entitled, if, to the extent to which the general assets have been increased by including the trust fund, they are in turn diminished by the return of such fund to the beneficiary entitled thereto."

See also the discussions contained in Foster v. Rincker, 4 Wyo. 484, 35 Pac. 470; Lusk Development & Improvement Co. v. Giinther, 32 Wyo. 294, 232 Pac. 518; and Vermont Loan & Trust Co. v. First National Bank of Cheyenne, et al., 37 Wyo. 216, 260 Pac. 534.

The district court in arriving at the percentage the savings department creditors and the commercial department creditors should each receive respectively from this stockholders' liability fund, calculated the same upon the basis of the full claims of each of the unsecured creditors in each department without regard to the sums each had or would have already received on account of dividends applied to such claims when the fund aforesaid came up for final distribution, and also without regard to the secured character of the savings department assets established by Section 10-130, supra, for the sole benefit of the depositors in that department.

In Bank Commissioners v. Security Trust Co., 75 N. H. 107, 71 Atl. 377, the court, speaking of the effect of the law of New Hampshire relative to trust companies which carried on a savings bank business in connection with a commercial department, said that:

"It did not intend to make two separate institutions of such trust companies as were engaged in the savings bank business, but did intend to create funds for the special benefit of the depositors in their savings departments."

And it was ruled that:

"Therefore the depositors in the company's savings

department, as well as the holders of debenture bonds, are entitled to share with the unsecured creditors in the distribution of the unpledged assets as to so much of their claims as are not satisfied by the application of the special funds created for their benefit. Bank Commissioners v. Trust Co., 70 N. H. 536, 539, 49 Atl. 113."

After quoting the provisions of the Connecticut law relating to banks and trust companies maintaining a savings department, the Supreme Court of Errors of that state remarked in Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, 90 Atl. 369, that:

"Obviously this provision was intended to safeguard the savings department deposits of a bank or trust company by requiring: (1) that the investment of all such deposits shall be in the investments by law permitted deposits in savings banks; (2) that the investments of such deposits shall be for the exclusive protection of the depositors in the savings department; and (3) that these investments shall be used to pay the savings department deposits before they can be used to pay any other liability of the bank or trust company." The court further said that:

"If the investments in the savings department should not suffice to pay the savings department depositor in full, the unpaid balance of his deposit was placed on a parity with all other deposits, and entitled, on distribution, to share ratably in the order prescribed by § 3482."

Section 3482, referred to in the excerpt just given, provided first for the payment of expenses of a receiver of a bank or trust company, secondly, the circulating notes, thirdly, all deposits, etc. See, also, Bassett, State Bank Commissioner, v. Merchants' Trust Co., 115 Conn. 364, 161 Atl. 785.

It was held in First National Bank of Seattle v. Mansfield State Bank, 127 Wash. 475, 221 Pac. 595, that a secured creditor is entitled to share pro rata with unsecured creditors in the assets of an insolvent

bank only upon the balance of his claim remaining after exhausting and applying the proceeds of his security to its diminution.

Treating the claims of savings depositors in the savings department of certain trust companies in liquidation, under the Massachusetts law, as to all intents and purposes, secured creditors so far as concerns the funds and investments of that department, in Petitions of Allen, Commissioner of Banks, In re Cosmopolitan Trust Co., etc., 241 Mass. 346, 136 N. E. 269, the court announced that:

"The savings department depositors, therefore, can share with the general creditors in the commercial assets of the Trust Companies for the balance of their claims after deducting the value of the assets, property and rights specially appropriated for their security."

Commenting on the rule at variance with the one thus adopted which allowed a creditor to share in the assets of an insolvent concern on the basis of the face of his claim without regard to what he had received thereon on account of realizing on security held by him, it was said:

"To follow the other rule would give to depositors in the savings department a great security beyond that which depositors in savings banks could have, and would imperil to an unusual extent the security naturally available for the commercial depositors. It would bring about a result which in the balancing of general and natural equities ought not to be reached except by statutory words of unequivocal meaning."

In the comparatively recent case of In re United Security Trust Co., 321 Pa. 276, 184 Atl. 106, it was similarly decided that the creditors of an insolvent trust company who had security for their indebtedness could have dividends based only on the amount of this indebtedness remaining unpaid after the sale and application thereof of the security thus held by them, and not on the full face amount of these debts.

Delineating the effect of the Oregon law relating to a bank which maintained a savings department, in Upham v. Bramwell, 105 Or. 597, 210 Pac. 706, it was said that the statute enjoined "the duty to keep all savings deposits received by it, and all securities in which the same are invested, separate and apart from all other moneys and funds of the bank. The investment of savings deposits is expressly restricted to specifically described securities of recognized financial soundness and readily convertible into money. The statute further imposes the strict obligation to hold all such investments, funds, and assets solely for the repayment of savings depositors, and expressly prohibits the use of the same to pay any other obligation or liability of the bank until after the payment in full of all savings depositors. It would be difficult to select more positive and definite terms for preserving the savings assets of a bank conducting a savings department exclusively for the repayment of savings depositors. The obligations of the depository bank, created by the statute, were carried into, and became a part of, every contract of deposit in the savings department, and attached to all of the funds, investments, and securities in which such savings deposits were invested." In this case, as in the case at bar, it was conceded that the savings assets would be insufficient to pay the claims of the savings depositors in full. Applying the same rule as employed in the above cited decisions, the court said that:

"It was manifestly the design of the statute to constitute the savings assets a primary fund, to which the savings depositors should resort for repayment of their deposits, with the right, in case the savings assets proved insufficient to pay the savings depositors in full, of sharing ratably with the other depositors in the general assets, upon the basis of their unpaid balances after distribution of savings assets.

"The savings assets are created entirely from sav-

ings deposits, and, if administered as the statute directs, the former will always equal the latter. When the savings depositors accept the fund provided by statute for the repayment of their claims, or so much thereof as remains on insolvency, and secure the application of the proceeds thereof to the payment of their claims, the measure of liability of the bank to savings depositors that the latter are entitled to assert against the general assets is the amount of the unpaid balances of the deposits."

See also 8 Michie on Banks and Banking, Chapter 16, § 27, p. 59.

We are inclined to the view that the rule discussed and applied by the authorities reviewed above should control here. We are aware that in Reichert, State Banking Commissioner, v. Fidelity Bank & Trust Co., 261 Mich. 107, 245 N. W. 808, the court appears to declare a rule for the distribution of the proceeds from a statutory stockholders' liability allotted to the banking branch of an insolvent trust company which would apportion such proceeds between its commercial and savings departments "in proportion to the amount of the claims filed and allowed in each department." We have difficulty, however, in reconciling this ruling with what was said in Reichert, State Banking Commissioner, v. Farmers' & Workingmen's Savings Bank, 257 Mich. 500, 242 N. W. 239. And in the still earlier case of Peters v. Union Trust Co., 131 Mich. 322, 91 N. W. 273, under a statute similar to the Oregon statute, which, as we have seen, resembles that of Wyoming in its pertinent features, it would seem to have been decided without dissent that the principle applied in the case of Upham v. Bramwell, supra, was properly employed by the circuit court in connection with facts akin in many respects to those at bar.

Another reason impels us to think that the rule of the case last above cited is the one which should be applied here. Insolvent concerns should have their

assets distributed as equitably as possible, regard being had, of course, to statutory requirements and the legal rights of the parties involved. It is a familiar rule of equity that where there are two funds to which a creditor can resort, and other creditors are limited to one of them, the former will be compelled to exhaust the fund upon which he has an exclusive claim and will be permitted to resort to the other for the deficiency only.

In the case of Petitions of Allen, Commissioner of Banks, In re Cosmopolitan Trust Co., etc., supra, the court quoting from the earlier case of First National Bank v. Eastern Railroad, 124 Mass. 518, 524, relative to the savings department depositors resorting to the general assets of a trust company along with other creditors, made use of this language:

" 'This result conforms to the rule of equality which the statute plainly recognizes as existing between all the creditors. It is supported by the consideration that this is the rule in bankruptcy; the rule applied in this commonwealth to the settlement of the insolvent estates of deceased persons; * * * and the rule in equity, which requires a creditor, who has two funds for the payment of his debt, as against the other creditors who have but one, to resort first to his own security, and permits him to claim against the common fund only to the extent that the security which he holds falls short.' "

See also Citizens Bank of Mound City v. State ex rel. Attorney General, 8 Kan. Appeals, 468; 3 Michie on Banks & Banking, Chapter 6, Sec. 83, p. 132.

In the case at bar, under the issues presented by the pleadings, the claims made by the parties thereon and the facts found herein, Hodgell, as a savings bank depositor, has the right to look for the payment of the amount due him from the insolvent bank not only to the savings department assets, but also in common with the creditors of the commercial department to the

stockholders' liability fund. We think, therefore, that the rule for the distribution of the fund here involved should be on the basis of the unpaid portions of the claims in each department after all the assets of each department have been collected and applied, i.e., the sum of $71,469.78 in the savings department and $142,993.25 in the commercial department, or approximately thirty-three per cent of the fund to be distributed for the savings department creditors and sixty-seven per cent for the commercial department creditors. As thus modified the judgment of the district court will be affirmed. The appellant will pay the costs of this appeal.

*Modified and Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.