## STATE EX. REL. BLAIR, CHAIRMAN OF THE BOARD OF COMMISSIONERS OF ALBANY COUNTY v. BROOKS, GOVERNOR.

CONSTITUTION—AMENDMENT—ADOPTION—CONSTRUCTION OF PROVISION FOR RATIFICATION BY MAJORITY OF ELECTORS—MEANING OF "ELECTORS" AND "RATIFY."

1. The constitution (Art. 20, Sec. 1) provides that any proposed amendment or amendments to the constitution shall be submitted at the next general election to the electors of the state, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of the constitution. *Held,* that a majority merely

of those voting on the amendment, if less than a majority of all the electors, is not sufficient to adopt an amendment, but a majority of all the electors of the state is required.

2.  An "elector," as the word is defined in Section 2 of Article 6 of the constitution, is one who is entitled to vote, and the word "electors" as used in Section 1 of Article 20, relating to amendments, means those entitled to vote.

3.  To "ratify," in the sense in which the word is employed in the provision of the constitution requiring a majority of the electors to ratify an amendment, is to affirm, and requires an affirmative expression of a majority of the electors to whom the question is submitted.

4.  Out of a total number of 37,561 votes cast at the election, 12,160 were for a proposed amendment to the constitution and 1,363 against it. *Held,* that the amendment had not been ratified by a majority of the electors, and was not, therefore, adopted.

[Decided February 15, 1909.]                    (99 Pac. 874.)

MANDAMUS.

The suit was brought as an original proceeding in the supreme court in the name of the State on the relation of C. E. Blair, Chairman of the Board of County Commissioners of Albany County, against Bryant B. Brooks, as governor of the state, to require the issuance of a proclamation by the respondent to the effect that a proposed amendment to the constitution had been adopted at the general election held in November, 1908. The proposed amendment was to take the place of and be known as Section 9, Art. 15 of the Constitution. The cause was heard upon a demurrer to the petition and alternative writ. The other material facts are stated in the opinion.

*W. E. Mullen,* Attorney General, for respondent, in support of the demurrer.

Section 1 of Article XX of the Constitution manifestly requires that a proposed amendment shall be submitted to all of the electors of the state. This is clearly expressed. The provision in the same sentence that the amendment shall become a part of the constitution "if a majority of the

electors shall ratify the same" refers to the electors to whom the amendment is required to be submitted and is not to be considered as meaning a majority of the electors voting on the amendment or question. It is unreasonable to assume that the convention had any other electors in mind than the electors of the state. A majority of the electors certainly means a majority of all, and the number of electors can only be determined by the greatest number voting on one or more questions or for one or more candidates at such election. (15 Cyc. 390.) The word "ratify" seems to require affirmative action. Electors who do not vote upon a question do not ratify anything, and, therefore, they must be counted against the amendment. A presumption of acquiesence does not apply to those not voting when the constitution or statute states by fair indication some rule regarding the vote necessary to ratify it. (South Bend v. Lewis, 138 Ind. 512; Gas Co. v. Rushville, 121 Ind. 206; State v. Fagan, 42 Conn. 32.) If it can be said that electors who do not vote upon the amendment are to be considered as assenting to it, then by the same process of reasoning the amendment would be ratified if the entire electorate of the state had refused to vote on the question or had remained away from the polls, for clearly if one man remaining away or silent is to be counted as assenting to a proposed amendment, then it would seem that any number or all of the electors can be so counted although absent from the polls or refusing to vote.

The cases cited by opposing counsel from the states of Arkansas, Nebraska, Ohio, Michigan, Kentucky, Missouri, Minnesota and California present constructions of constitutional provisions unlike the one under consideration here. The difference in the language used in Section 3 of Article XX from that in Section 1 has no logical bearing upon the question for the reason that under Section 1 the people are required to ratify the proposed amendment by referendum vote, while under Section 3 they are simply expressing themselves for or against the calling of a constitutional con-

vention. There is a marked difference between the two for the reason that no constitution adopted by such convention would go into effect until submitted to and adopted by the people. Therefore, the ratification and adoption of an amendment is more serious than the mere calling of a convention to frame a new constitution, since in the latter case the people reserve the right to adopt or reject the work of such a convention. If it was intended by the constitution that the rule prescribed as to calling a convention should apply to amendments it would have been so provided. The Idaho case of Green v. Board, 47 Pac. 260, is cited in support of plaintiff's contention. The majority opinion in that case seems to be unsupported by either reason or authority, and to be based entirely upon the theory that any other conclusion would be equivalent to saying that no amendment to the constitution is practicable. The concurring opinion is even more illogical in that it attempts to support the majority opinion by cases decided under constitutions and statutes differing entirely in phraseology from the provision of the constitution of that state which was being considered, and which is similar to the provision under consideration here. A similar case, under a provision in practically the same language, is that of *Re.* Denny, 51 L. R. A 722, an Indiana case, and it is held in an exhaustive opinion that a majority of all the electors of the state is necessary to ratify a proposed amendment. That case seems to have been unquestioned until the decision in the Idaho case above mentioned. (15 Cyc. 390.)

*Sheridan Downey,* for the relator, *contra.*

In construing the phrase "a majority of the electors" some words must be supplied or understood to give it a definite and precise meaning. As it stands it is incapable of exact construction. The theory of the defendant would made it read "a majority of the electors in the state," or "a majority of all electors voting at such election." Upon our theory the phrase implies "a majority of the electors voting on such amendment." This is the meaning given to

the same words and provision in the Idaho constitution by the supreme court of that state. (Green v. Board, 95 Am. St. 169.)

Cases under constitutional provisions requiring a majority or more of all votes cast at the election are not in point, and we cite them by way of exclusion in order to simplify the discussion. (Knight v. Shelton, (Ark.) 134 Fed. 423; Rice v. Palmer, 78 Ark. 432; State v. Babcock, 17 Neb. 188; Bank v. Saunders, 51 Neb. 801; State v. Foraker, 46 O. St. 677; State v. Powell, 77 Miss. 545; Stebben v. Court, 108 Mich. 693; Belknap v. Lewisville, 99 Ky. 475; State v. Sutterfield, 54 Mo. 392; State v. Mayor, 73 Mo. 435; State v. McGowan, 138 Mo. 187; Bayard v. Klinge, 16 Minn. 249; People v. Berkely, 102 Cal. 298.) A similar provision is found in Section 3 of Article XX of our constitution which provides for a vote upon a proposition to call a constitutional convention, but the provision has not been judicially interpreted in this state.

The case most strongly in point against the relator's contention is the Indiana case of *Re*. Denny, 51 L. R. A. 722. The provision considered in that case is very nearly the same as that in our constitution. The court construed it according to the view taken by the respondent. In citing cases to support the conclusion in that case the court neglected to observe the obvious and radical difference between various constitutional provisions.

Another class of cases which must be left out of consideration because based upon different provisions are those construing a constitution or statute requiring a majority of the voters of the county or state in order to ratify or carry the proposed question. Such cases are: People v. Warfield, 20 Ill. 160; People v. Wyant, 48 Ill. 263; Chesnutwood v. Hood, 68 Ill. 132; 15 Kan. 500; Everett v. Smith, 22 Minn. 53; State v. Brassfield, 67 Mo. 331; Hawkins v. Board, 50 Miss. 735; Cocke v. Gooch, 5 Heisk. 310; Duke v. Brown, 96 N. C. 127.

Coming to a consideration of those cases which construe statutes and constitutional provisions providing for the ratification of a question by a majority, without further qualification, the rule laid down by the common law is declared by Lord Mansfield to be "whenever electors are present, and do not vote at all, they virtually acquiesce in the election made by those who do." (Oldknow v. Wainwright, 2 Burr. 1017.) And again by Lord Denman to the effect that a vote by a majority of a meeting means a majority of those who choose to take a part in the proceedings of the assembly. (Gosling v. Veley, 72 Q. B. 406.) Where, at a general election, a proposition is submit'ed to the voters, the result of the vote on the proposition will be determined by the votes cast for and against it, in the absence of a provision in the law under which it is submitted to the contrary. (Dayton v. St. Paul, 22 Minn. 400; Green v. Board, (Ida.) 47 Pac. 259; State v. Barnes, 3 N. D. 319; Gillespie v. Palmer, 20 Wis. 544; Bott v. Wurts, 63 N. J. L. 289; Howland v. Supervisors, 109 Cal. 152; Court v. Trimble, 20 Ky. L. Rep. 827; State v. Langlie, 5 N. D. 594; Com'rs v. Winkley, 29 Kan. 36; State v. Echols, 41 Kan. 1; Holcomb v. Davis, 56 Ill. 413; Davis v. Brown, 46 W. Va. 722; Walker v. Oswald, 68 Md. 150; South Bend v. Lewis, 138 Ind. 536.) Where the adoption of a measure depends on the vote of the majority, those who do not vote are considered as acquiescing in the result declared by those who do vote, even though those voting constitute a minority of those entitled to vote. (Cass Co. v. Johnson, 95 U. S. 360; Douglas v. Pike Co., 101 U. S. 677; Twp. v. Smith, 111 U. S. 556; Knox Co. v. Bank, 147 U. S. 99; Madison Co. v. Priestly, 42 Fed. 817; Sanford v. Prentice, 28 Wis. 358; Metcalf v. Seattle, 1 Wash. 297; Nyester v. Seattle, Id. 308; State v. Binder, 38 Mo. 455; State v. Remick, 37 Mo. 272; Alley v. Denson, 8 Tex. 297; Reiger v. Comr's, 70 N. C. 319; Taylor v. Taylor, 10 Minn. 107; De Soto v. Williams, 49 La. Ann. 439; Taylor v. McFadden, 84 So. 269; People v. Harp, 67 Ill. 62; Dunnovan v. Green, 57 Ill. 67; State v. Padgett, 19 Fla. 539.)

Voters who cast an amendment ballot marked neither "for" nor "against" are to be treated as "present and not voting," and to be regarded as assenting to the will of the majority. (Walker v. Oswald, 68 Md. 150; Smith v. Proctor, 130 N. Y. 319; May v. Bermel, 20 App. Div. 53; 46 N. Y. Supp. 622; Montgomery v. Trimble, 42 L. R. A. 738; Marion Co. v. Winkley, 29 Kan. 40; State v. Echols, 41 Kan. 1; Dexter v. Raine, 18 O. L. J. 61; Lumb v. Cain, Ind. 486; Schlicther v. Keiter, 156 Pa. 119; Kuns v. Robertson, 154 Ill. 394; Gas Co. v. Rushville, 121 Ind. 206; State v. Dillon, 125 Ind. 69; State v. Vanosdal, 131 Ind. 391; Davis v. Brown, 46 W. Va. 720; State v. Yates, 19 Mont. 239; Somers v. Bridgeport, 60 Conn. 528; Atty. Gen'l v. Shepard, 62 N. H. 383; Oldknow v. Wainwright, 2 Burr. 1017.)

The Idaho case, 47 Pac. 259, is on all fours with the case at bar, and it was held that an amendment was carried by a majority vote of those voting thereon, although it failed to receive a majority of all the votes cast at the election. The opinion of the court largely disregards the authorities and is based upon what was conceived to have been the intention of the provision. A concurring opinion, however, cites abundant authority strongly supporting the conclusion. While the case from Indiana is strong authority on the other side of the question it is to be observed that the Indiana constitution required instead of a majority of "the" electors, a majority of "said" electors. The contrast in language offered by Section 3 of Article XX in our constitution may be taken as indicating that the calling of a constitutional convention was thought to be a more serious matter than an amendment to the constitution, and, therefore, it was provided that the calling of a convention would require a majority of all voting at the election. We submit that a different construction must be given to the words used in Section 1 from those used in Section 3, and in doing so it must necessarily be held that the provision in Section 1, calling merely for a majority of the electors, means only a

majority of those voting on the amendment. Any other construction would render it almost impossible to secure a vote upon a constitutional amendment sufficient for its adoption.

Scott, Justice.

This is a proceeding in mandamus originally instituted in this court by the plaintiff to compel the defendant to isssue a proclamation upon the return and canvass of the vote cast at the regular November, A. D. 1908, election upon the adoption or rejection of a proposed constitutional amendment. To the petition and the writ the defendant has interposed a demurrer upon the ground that they do not state facts sufficient to constitute a cause of action.

The petition is as follows:

"Comes now the above named plaintiff and respectfully represents unto the court and alleges that the said C. E. Blair is a taxpayer and resident of Albany County, and that he is chairman of the Board of County Commissioners of Albany County, duly elected, qualified and acting as such.

"That the Ninth State Legislature of the State of Wyoming, by joint resolution, duly proposed a certain amendment to the constitution of the State of Wyoming, said proposed amendment being number three of proposed amendments to the state constitution, to take the place of, and be known as, Section 9, of Article XV to said constitution of Wyoming, being as follows, to-wit:

" 'Article XV.   Section 9.   There shall be a State Board of Equalization composed of the chairmen of the respective Boards of the County Commissioners of the state.'

"That such amendment was duly submitted to a vote of the electors of the State of Wyoming at the general election on the third day of November, 1908. That at such election the total number of votes for the adoption of such resolution was twelve thousand one hundred and sixty; that the number of votes against its adoption was thirteen hundred and sixty-three:

"That thereafter the State Canvassing Board of the State of Wyoming, duly canvassed the votes cast at said election for said amendment, and did declare and find the votes cast thereon as above set out. That thereafter, and on the 5th day of December, 1908, said State Canvassing Board did make and file in the office of the Secretary of State, a certificate signed by the members thereof containing a statement of the votes, so canvassed and the results of such canvass as above set out.

"That Bryant B. Brooks is Governor of the State of Wyoming, and at all times herein mentioned was such, duly elected, qualified and acting.

"That said Bryant B. Brooks has never issued his proclamation announcing the adoption of such amendment and refuses so to do, falsely alleging that said amendment was not adopted by the people of the State of Wyoming.

"That your plaintiff, C. E. Blair, is entirely without remedy in the premises unless it be afforded by the interposition of the Honorable Court.

"Plaintiff therefore prays that a writ of mandamus may issue against the said defendant, the said Bryant B. Brooks, and that he be commanded to immediately issue his proclamation announcing the adoption of said amendment. And that such other and further orders may be made as justice requires."

The question presented calls for a construction of Section 1, Article XX of the constitution. That section reads as follows:

"Section 1. Any amendment or amendments to this constitution may be proposed in either branch of the Legislature, and, if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the Legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least twelve (12) consecutive weeks,

prior to said election, in at least one newspaper of general circulation, published in each county, and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution."

It is contended by the defendant that it appears upon the face of the petition that the required number of votes were not cast upon the proposed amendment as provided by this section and that for that reason the amendment failed of ratification. It appears from the petition that there were 37,561 votes cast at that election and of these 12,160 voted in favor of the adoption of the amendment and 1,363 voted against its adoption, or, 13,523 out of 37,561 who voted at the election voted upon the question.

The provision of the constitution is explicit in its terms. Such proposed amendment can only be ratified by a majority of the electors. It would be anomalous to say in view of the section taken as a whole that it was intended to mean only those who actually voted upon the amendment, or in other words, a majority of some of the electors, excluding others. It requires the proposed amendment to be submitted to the electors of the state, those who are entitled to vote, and it is by a majority of the electors, that is, electors of the state, and not a majority of those actually voting upon the question, that such a proposed amendment is ratified. Any other construction would authorize the counting of all who did not vote on the question as in favor of the adoption, a construction which is not borne out by the language nor is it in harmony with the spirit of the constitution. While it is true that a majority or a plurality of the votes cast elects a candidate for an office, yet, when a voter fails to cast his vote for any candidate for a particular office the preference of the elector has not been legally expressed and there is nothing to record in favor of or against any such candidate. The word elector is defined in the constitution (Section 2, Article VI) as follows:

"Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or

(12)

territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein otherwise provided."

There is no room for doubt as to what the constitutional convention meant when it used the word *electors* in Section I of Article XX. The word according to the definition given it by those who framed the constitution means those who are entitled to vote, and when the constitution says a majority of the electors it means, in the absence of any qualifying phrase, a majority of those who are entitled to vote. This is made more evident from the fact that the phrase "if ratified by a majority of the electors" follows the provision that the proposed amendment shall be submitted to the electors of the state; and the words "the electors" without other qualification, a majority of whom is required to ratify the amendment, clearly means the electors of the state. The language is broader in meaning than a mere majority of the electors who actually vote upon the proposition. Neither residence of the elector nor failure to vote can militate against this proposition. The word elector is generic. It includes not only those who vote but those who are qualified yet fail to exercise the right of franchise. To hold otherwise would in effect give to the word *electors* a narrower and more restricted meaning than that given to it in the constitution.

It is no argument against this reasoning to inquire how the question as to the adoption of a proposed amendment which has been submitted to the electors of the state shall be determined or to point to the difficulty of determining the number of electors or the possibility of confusion in the absence of any law as a guide. In the case before us those questions are not involved. The number of electors of the state is not alleged. The number of votes cast is alleged, and taking that as a basis the proposed amendment failed of ratification. There were more than half of the electors voting at the November, 1908, election who failed to indicate their desires or wishes upon the adoption of the

proposed amendment.  It was the expression of the elector's wish upon the question which the law called for—a positive expression in a particular manner and not the absence of such expression which was authorized to be recorded.  To ratify is to affirm, and the constitution requires in order to ratify that there be an affirmative expression of a majority of the electors to whom the question is submitted the withholding of which is not sufficient.  The proposed amendment was submitted to the electors of the state and it required a majority of those electors to ratify it.  As it appears that the number of electors who voted at the election and in favor of ratification of the amendment were less than a majority of the electors who voted at the election it follows that the amendment was not ratified.  The demurrer should be sustained.

We are aware that the conclusion here reached is not in harmony with some of the decisions.  Each decision, however, is based upon the wording of the constitutional provision in the jurisdiction in which the question arose.  We observe especially the opposite view expressed in Green v. State Board of Canvassers, (Ida.) 95 Am. St. Rep., 169. In Indiana an amendment to the constitution was required to be submitted to the electors of the state, and to be ratified by a majority of "said" electors, and it was held that a ratification by a majority only of those voting on the amendment was not sufficient.  Re. Denny, 51 L. R. A. 722.  The case in which that decision was rendered supports the conclusion we have reached.  The words "said electors" in the Indiana constitution and "the electors" in our constitution, refer to the preceding words "the electors of the state" to whom the amendment was required to be submitted, and we think mean the same thing, viz: "the electors of the state."  It may be conceded that the cases are in hopeless conflict (Cooley's Const. Limitations, 6th Ed., 747, note), and that being so we feel that it would not be profitable to enter into any lengthy discussion of these cases or attempt to differentiate between them.  We have confined our views to the wording of our constitution, its plain import, and

the reasoning and conclusion reached are to our minds the most logical.

The demurrer is sustained.

POTTER, C. J., and BEARD, J., concur.