STATE EX REL. PETERSON v. ELLSWORTH

(No. 2251; July 13, 1943; 139 Pac. (2d) 744)

For the appellant, there was a brief by *William S. Edmonds,* of Kemmerer, and *Harry B. Henderson, Jr.* and *Albert D. Walton,* of Cheyenne, and oral argument by *A. D. Walton.*

For the respondent, there was a brief by *Patrick J. Quealy* and *Ivan S. Jones,* of Kemmerer, and oral argument by *P. J. Quealy.*

BLUME, Justice.

On April 7, 1942 one Harvey Cottrell was the duly elected and qualified sheriff of Lincoln County, Wyoming. One, Earl Ellsworth, the defendant in this case and the respondent herein, was on that date the duly qualified undersheriff theretofore duly appointed by Harvey Cottrell. On that date, namely on April 7, 1942, Harvey Cottrell resigned the office of sheriff of said county. The defendant Ellsworth accordingly took possession of the office of sheriff. On April 9, 1942, no other appointment having been made, the Board of

County Commissioners of Lincoln County, Wyoming, appointed the plaintiff, F. B. Peterson, to the office of sheriff of said county for the unexpired term of Harvey Cottrell. Peterson duly qualified by taking the oath of office and executing the official bond required by law and thereupon demanded possession of the office of sheriff from the defendant Ellsworth. The defendant Ellsworth, who in the meantime had taken the oath of office of sheriff and had filed a bond as such, refused to give up the office to the plaintiff Peterson. Thereupon, the plaintiff Peterson commenced this action to oust the defendant Ellsworth from the office of sheriff. The amended petition filed herein alleges the facts above set forth. The defendant filed an answer alleging the fact that he on April 7, 1942 was undersheriff of Lincoln County, Wyoming, and that he had a legal right to the office of sheriff upon the resignation of Harvey Cottrell. The court overruled the demurrer filed to the answer of the defendant, in effect holding that the defendant Ellsworth became sheriff upon the resignation of Harvey Cottrell. The plaintiff not pleading further, a judgment was entered according to the holding of the trial court and from that judgment the plaintiff Peterson has appealed to this court.

The defendant claims the office pursuant to the provisions of section 30-807, Wyoming Revised Statutes, 1931 which, in so far as material herein, reads as follows (before the amendment of 1943) :

"* * * Each undersheriff provided for herein shall qualify as required by law, of deputy sheriffs, and shall be sheriff in case of the death, resignation or other disability of the sheriff."

This provision has been in force since 1876. Sec. 2, Art. 4, Ch. 28, Compiled Laws of 1876. The section containing this provision was amended by chapter 110, Session Laws of 1925, which, however, did not change

the provision above quoted. The section was contained as section 1465 in the Compiled Laws of 1920. The plaintiff Peterson claims the office pursuant to the appointment made by the Board of County Commissioners of Lincoln County, claiming that the statutes on the subject must be read in pari materia. Section 30-111, Wyo. Rev. St., 1931 provides as follows:

"When a vacancy shall occur in the office of sheriff, county clerk, county treasurer, county and prosecuting attorney, or county commissioners, superintendent of schools, coroner, surveyor, road supervisor, assessor, justice of the peace, constable or other county or precinct officer, any such vacancy shall be filled by appointment by the board of county commissioners in the county in which such vacancy exists. All such officers so appointed shall give bond, qualify and enter upon the discharge of their respective duties as by law required, and shall continue in the faithful discharge of such duties for the balance of the unexpired term of their respective predecessors in office."

That section has been in force since 1890, Chapter 80, section 51, Laws of 1890, and, as section 1371, was contained in the Compiled Statutes of 1920. Amendments made in the section since 1890 are not material herein. It contained no exceptions, just as the statute as it now stands contains no exceptions. In fact, section 24 of article 1 of chapter 28 of the laws of 1876 provided that the Board of County Commissioners should fill all vacancies in county offices "except in cases otherwise provided by law." The exception may be explained by the fact that probate judges were, under certain contingencies, empowered to fill vacancies in the Board of County Commissioners. Pertinent also are the following statutory provisions. Section 36-1707, Rev. St. 1931, provides in part as follows:

"Every elective office shall become vacant on the happening of either of the following events to the incumbent before the end of his term of office: 1. His death. 2. His resignation. * * *"

Section 30-801, Rev. St. 1931, provides as follows:

"There shall be in each county organized for judicial purposes, a sheriff, who shall hold his office for a term of two years, and until his successor is elected and qualified, or appointed and qualified, as the case may be, and who shall before he enters on the duties of his office, execute a bond to the people of the State of Wyoming, with sufficient sureties, in the penal sum of four thousand dollars, to be approved by the county commissioners, conditioned for the faithful performance of the duties of sheriff as required by law, and that he will pay according to law, all moneys which shall come into his possession belonging to the state, county school funds, or to any person or corporation, as such sheriff, and that he will render a just and true account thereof, and shall deliver to his successor in office or to any other person authorized by law to receive them, all moneys, books, papers and other things appertaining thereto or belonging to his office as such sheriff."

Except for the special provisions of section 30-807, supra, there can, of course, be no doubt that the Board of County Commissioners would have had the power to fill the vacancy caused by the resignation of Harvey Cottrell. Counsel for the defendant argue that when the Statute states that the undersheriff *shall be* sheriff in case of resignation of the sheriff, that plainly shows that he actually became the sheriff in such case; that, accordingly, there exists no vacancy in such a case and the power of the Board of County Commissioners would not become operative. The provision however may be explained on historical grounds. It is stated in 57 C. J. 777 that "At Common Law the authority of a deputy sheriff ipso facto terminates when the sheriff goes out of office by death, resignation, removal or otherwise. * * * But, to remedy the difficulty resulting from having no sheriff in office the statutes usually provide that in such case the duties of the office shall be discharged by the deputy or undersheriff until a new sheriff is appointed and qualifies." We have found no

case which has held in accordance with the contentions of the defendant herein. On the contrary, the general rule is laid down in 57 C. J. 766 as follows: "The status of an undersheriff on the death of the sheriff to execute the duties of the sheriff as prescribed by statute continues only until the vacancy is filled by election or appointment." In the case of Attorney General ex rel. vs. Fawcett, 263 Mich. 288; 248 N. W. 624, a similar contention was made as by the defendant in the case at bar, but the court overruled this contention holding that the appointing power had the authority to fill the vacancy. In that case the statute read that "Whenever a vacancy shall occur in the office of sheriff of any county the undersheriff of such county shall in all things execute the office of sheriff until a sheriff shall be elected and qualified." The reading of that statute is somewhat different from ours, but the effect is substantially the same and the court based its holding on the historical grounds above mentioned. Furthermore, we must bear in mind that section 30-807 does not provide that the undersheriff shall give a bond as sheriff. He was neither elected nor appointed so as to come within the provisions of section 30-801, supra, providing for the giving of a bond by the sheriff who is elected or appointed. A bond, it is true, was actually given by the defendant in this case but it was a voluntary bond for which no provision is made in the statutes and it is at least doubtful that the bond given in such case has any legal effect. See 53 C. J. 559-560. And that a sheriff should act as such without giving a bond would be of course against public policy.

A situation like that before us arose in Hot Springs County of this State in 1925. Inquiry as to the law was made of the Honorable David J. Howell, then Attorney General. The latter in a letter of October 14, 1925 holding that the undersheriff held office only until the vacancy should be filled by the Board of County Com-

missioners, wrote as follows: (The sections of the Revised Statutes, 1931, corresponding to the sections of the Statutes cited, have been, by us, inserted in brackets.)

"October 14, 1925

"Norman E. Lewis, Esq.
"County & Prosecuting Attorney,
"Thermopolis, Wyoming

"Dear Sir:

"This office has your letter requesting an opinion concerning the Sheriff and Undersheriff in your county. Mr. Scott Hazen, Sheriff of Hot Springs County, Wyoming, has signed a resignation to take effect November 2, 1925. You ask regarding the bond and qualifications of the Undersheriff.

"I hardly feel that it will be necessary to go into this matter, as under Section 1371, Wyoming Compiled Statutes of 1920, (sec. 30-111 Rev. St. 1931) the Board of County Commissioners is authorized to fill the vacancy in the office of Sheriff. You mention Chapter 110, Session Laws of Wyoming, 1925, (sec. 30-807 Rev. St. 1931) and by inference cite it as authority to the effect that the Undersheriff becomes Sheriff in case of the death, resignation, or other disability of the Sheriff. This, in my opinion, means only that he becomes Sheriff until the Board of County Commissioners appoints a successor.

"Chapter 110, heretofore cited, differed in no wise in regard to this matter from Section 1465, Wyoming Compiled Statutes of 1920. (Sec. 30-807 Rev. St. 1931) In fact this provision has been in effect since 1876, the wording remaining identical through all of these years, and at the same time the present Section 1371, Wyoming Compiled Statutes of 1920, (sec. 30-111 Rev. St. 1931) has been practically the same. During this period it has become a settled course of procedure recognized by the courts and the legislature that the above interpretation is correct, the Undersheriff holding office only until the County Commissioners appoint a successor and he assumes the duties of the office.

"I do not believe that Section 2 of Chapter 110, Session Laws of Wyoming, 1925, can be construed to mean that it repeals Section 1371, Wyoming Compiled Stat-

utes of 1920 (sec. 30-111 Wyo. Rev. St. 1931) as this Section and Section 1465 (sec. 30-807 Rev. St. 1931) have never been considered during all of the years mentioned as being in conflict but rather in harmony. The repeal of a specific law in my opinion should be sufficiently definite to leave it free from at least reasonable doubt.

"Furthermore, if this is not correct there is nothing to prevent an Undersheriff upon succeeding to office from appointing the resigned Sheriff as his Undersheriff and thus reducing all of removal proceedings in the case of Sheriffs to a ridiculous legal merry-go-round.

"Very truly yours,
"David J. Howell,
"Attorney General."

And on April 1, 1942, the Honorable Ewing T. Kerr, Attorney General, wrote in regard to the situation now before us as follows:

"April 1, 1942

"Honorable J. A. Christmas
"County and Prosecuting Attorney
"Kemmerer, Wyoming
"Dear Mr. Christmas:

"I enclose herewith copy of opinion rendered by the Honorable D. J. Howell October 14, 1925, same being self-explanatory, and I believe fully answers the question which you have propounded.

"It has been the custom and practice of this office to adhere to the opinions of our predecessors unless these opinions are clearly erroneous. We have no reason to disagree with the opinion rendered by Attorney General Howell and therefore approve the same.

"This opinion was rendered seventeen years ago, and the legislature having failed to amend the law changing the construction placed thereon, would be deemed under several decisions of our Supreme Court to have acquiesced in the construction thereof.

"Very truly yours,

"Ewing T. Kerr,
"Attorney General."

It is argued in the brief for plaintiff and appellant that it has been the universal custom in this State for the Board of County Commissioners to fill vacancies in the office of sheriff and that it has always been understood that the undersheriff, in case a vacancy in that office occurs, holds that office only until the vacancy is filled by the Board of County Commissioners. Counsel for the defendant argue that this court cannot take judicial notice of such practice. That may be correct. It is not improbable, however, that the Attorney General in 1925 had some knowledge of the practice in this State and that he took that into consideration when he wrote his letter. That opinion was written seventeen years ago. It has probably been acquiesced in throughout this State except in the instant case. The legislature during that time did not see fit to change the law contrary to that opinion, which would seem to indicate to some extent at least that it acquiesed during the period of seventeen years in the construction of the law of the Attorney General.

Section 30-111, supra, gives the Board of County Commissioners power to fill vacancies in every county office. We should be able to at least conjecture some reason why an exception should be made in connection with the office of sheriff, but we have not been able to do so. In fact, as already indicated, it is altogether probable, in view of the absence of a provision for a bond to be given by the undersheriff as sheriff in case of a vacancy in the office of sheriff, that the statute positively shows the absence of any such reason. The section last mentioned provides as stated that when a vacancy exists in the office of sheriff the Board of County Commissioners shall fill it. If the contention of the defendant is correct the power given by that

section to the Board would be substantially and entirely nullified. We find no justification for giving the section that construction. The statute contains no exception to the power of appointment. It is plain and unambiguous and the rule of law is that "where the terms of a statute are positive and unambiguous exceptions not made by the legislature cannot be read into it." 59 C. J. 1092. Even if the law as enacted in 1876 could be construed as actually making the undersheriff the sheriff, in case of death or resignation of the sheriff, so that no vacancy could be said to exist in such case, the law of 1890 clearly modified it by containing no exception to the power to fill a vacancy in any office in the county. 59 C. J. 1052. The provision that the undersheriff should be sheriff as mentioned in section 30-807, supra, was, as already stated, enacted in 1876. It would seem to be clear that if the legislature had thought that to be an exception to section 30-111, it would not have let the period of fifty years pass by without recognizing that exception in section 30-111, supra, and amending that section accordingly. But, it did not do so, except, that in its session of 1943, chapter 18, it definitely decided that the undersheriff should serve only until the vacancy should be filled by the Board of County Commissioners. This amendment, we think, merely recognizes and intended to make certain the law as it had been in this State for at least half a century. We think, accordingly, that we should hold that the defendant as undersheriff lawfully held the office of sheriff only until the Board of County Commissioners appointed the plaintiff to the office.

An election has been held since the commencement of this action and the office has been duly filled according to law by that election and we understand that the

defendant was duly elected to the office. No order of ouster can, accordingly, be issued herein and this opinion can serve only as a declaration of rights as of the time of the commencement of this action and to that extent, and to that extent only, the judgment of the District Court will be reversed and an order entered accordingly.

*Reversed in part.*

KIMBALL, Ch. J., and RINER, J., concur.