Belknap,
No. 4388.

## Laconia Water Company *v.* Laconia.

Argued February 2, 1955.

Decided March 11, 1955.

*Nighswander, Lord & Bownes* (*Mr. Nighswander* orally), for the plaintiff.

*A. Gerard O'Neil,* city solicitor and *John N. Nassikas,* special counsel (*Mr. Nassikas* orally), for the defendant.

KENISON, C. J. Revised Laws, chapter 56, section 4 provides that the two-thirds vote of a city council to acquire a municipal water works must be "confirmed by a majority of the qualified voters at a regular election or at a special meeting duly warned in either case . . . . " The issue in this case is whether the vote at the special meeting of June 22, 1954, at which a majority of those voting, but less than a majority of those qualified to vote, was a confirming vote within the meaning of R. L., c. 56, s. 4. This is a problem of statutory construction bearing upon the legality of a proposed expenditure of public funds which may be properly determined in a declaratory judgment action. *Leavitt* v. *North Hampton,* 98 N. H. 193.

"In the absence of express regulation, a proposition is carried in a town meeting, or other legislative assembly, by a majority of

the votes cast." *Attorney General* v. *Shepard,* 62 N. H. 383, 384. This has been regarded as "the leading case" on the subject (*Opinion of the Justices,* 98 N. H. 530, 531) and states the general rule here as well as elsewhere. *Attorney General* v. *Bickford,* 77 N. H. 433, 434; McQuillin, Municipal Corporations (3rd *ed.*) *s.* 12.18; Anno. 131 A. L. R. 1382. The basis for this rule is that the elective franchise is to be exercised affirmatively. "Silence on a part of the members not voting cannot be counted against the express voice of another part voting." *Richardson* v. *Society,* 58 N. H. 187, 188. The same thought was expressed in *Cashman* v. *City Clerk of Salem,* 213 Mass. 153, 155, in the following language: "Elections must be settled as a practical matter by those manifesting interest enough to vote. Failure on the part of some of the electorate to take the trouble to express their views by depositing their ballots cannot stop the machinery of government. Apathy is not the equivalent of open opposition." See *Opinion of the Justices,* 98 N. H. 530, 533. The practical working of the elective system necessarily requires that those who do not vote be considered as acquiescing in the result declared by a majority of those who do vote. "The great weight of authority holds that where a statute provides for a vote of 'a majority of the voters,' 'a majority of the legal voters,' 'a majority of the qualified voters,' etc. all that is required is a majority of those actually voting, unless a contrary legislative intention and purpose is very clearly expressed." *Munce* v. *O'Hara,* 340 Pa. 209, 211.

The plaintiff argues that R. L., *c. 56, s. 5,* relating to the acquisition of utilities by towns which requires a favorable vote by "two-thirds of all the voters present and voting" indicates that the test for cities was not intended to be the same as for towns and that the general rule should not apply. It is the plaintiff's position that the legislative history of the two sections shows that the Legislature did not intend "majority of the qualified voters" to mean majority of those present and voting and if they had, they would have said so. Plaintiff claims that the statute is clear and unambiguous and means those who were eligible or qualified to vote at the meeting whether they did or not. While these arguments are not tenuous and do have merit, the course of judicial decisions indicate that from an early date they have been rejected as persuasive evidence of legislative intent in cases of elections, bond issues and referendums. *Cass County* v. *Johnston,* 95 U. S. 360; *Knox County* v. *Ninth Nat'l Bank,* 147 U. S. 91. *Cf. Opinion of*

*the Justices,* 86 N. H. 604. In construing similar language in *Carroll County* v. *Smith,* 111 U. S. 556, 565, the court said that "the words 'qualified voters,' as used in the Constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting. In that connection, a voter is one who votes, not one who, although qualified to vote, does not vote."

The various statutes which authorize municipalities to make appropriations or authorize the power of eminent domain do not always use the same phraseology in stating when a vote becomes operative although the meaning is the same in each case. However when the Legislature intends that a definite number of the qualified voters must cast their ballots, they say so expressly. R. L., c. 51, s. 5; c. 70, s. 4; c. 139, s. 3. In the absence of such an express provision, a majority of the qualified voters who vote determine whether an appropriation shall be made, a bond issue approved or a proposition accepted. R. L., c. 267, ss. 58, 59, authorize towns to acquire dams by a two-thirds vote of all voters present and voting at a meeting "at which a majority of all the legal voters are present and vote." This indicates that the Legislature knows how to express a stringent voting requirement, if it desires to do so in any particular case. It did not make any such requirement under R. L., c. 56, s. 4, but merely required confirmation by "a majority of the qualified voters at [the] election or . . . meeting." This language does not suggest that a "majority of the qualified voters of the city" must take affirmative action, and the general rule is applicable that a majority of those voting is sufficient.

The construction of R. L., c. 56, s. 4, which we adopt is believed to state the legislative intent as understood and enforced in New Hampshire. One of the facts of political life in this state is that questions, propositions and referendums are voted upon by only a fraction of the same voters who cast their ballots for candidates and officers. This is a matter of common knowledge which is presumably known to the Legislature which is composed of many municipal and election officers. *State* v. *Duranleau,* 99 N. H. 30, 33. It can be verified readily by an examination of election results in almost any city or town clerk's office or by a casual reading of the New Hampshire Manual for the General Court for any year.

The answer to the transferred question is "yes" and the order is

*Judgment for the defendant.*

All concurred.