SCHOOL DISTRICTS NOS. 2, 3, 6, 9, AND 10, IN the COUNTY OF CAMPBELL and State of Wyoming, and Robert Sorenson, Lloyd Halladay, Lawrence Gilbertz, Mrs. R. E. Isenberger, and Ted Cosner, qualified electors of Campbell County, Wyoming, Appellants (Plaintiffs below),

v.

Nelle E. COOK, Superintendent of Schools of Campbell County, Wyoming, and County of Campbell, State of Wyoming, Appellees (Defendants below).

SCHOOL DISTRICTS NOS. 2, 3, 6, 9, AND 10, IN the COUNTY OF CAMPBELL and State of Wyoming, and Robert Sorenson, Lloyd Halladay, Lawrence Gilbertz, Mrs. R. E. Isenberger, and Ted Cosner, qualified electors of Campbell County, Wyoming, Appellants (Plaintiffs below),

v.

Nelle E. COOK, Superintendent of Schools of Campbell County, Wyoming, Appellee (Defendant below).

Nos. 3549, 3550.

Supreme Court of Wyoming.

March 8, 1967.

Robert R. Rose, Jr., Casper, for appellants.

Wade Brorby, County Atty., Thomas Morgan, Gillette, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Pursuant to the provisions of § 21–233, W.S.1957, the defendant, Nelle E. Cook, County Superintendent of Schools for Campbell County, Wyoming, published notice that a special election would be held on March 15, 1966, for the purpose of affording the qualified electors of said county an opportunity to adopt or reject a duly approved plan for the formation of a new countywide school district. The proposal affected twelve organized school districts in the county and each district was designated as a separate polling place for the election. In the canvass of the votes the districts were separately tabulated. The principal dispute here centers around the outcome of that election. Bearing upon this question is the provision of the foregoing section which reads:

"* * * The formation of the new district shall have been approved. if one of the following alternative requirements shall have been met.

"(a) A majority of the votes of the total area involved, disregarding all district boundaries, shall constitute approval if no district within said area has a majority of the total number of electors of the area.

"(b) If one component district within the area has a majority of the total number of electors of the proposed reorganized district, and a majority of the votes cast at the special election within the most populous district shall have been in favor of the proposed reorganized district, approval shall be indicated by this favorable majority in this most populous district and, in addition, by a favorable majority of the total area outside of this most populous district and considered separate from it by otherwise disregarding all existing district boundaries."

In this connection the notice of the county superintendent advised that under the law of Wyoming the proposal would be deemed rejected unless approved by a majority vote in District One—which includes the Town

of Gillette and which the parties stipulated contained "more persons entitled to vote" than "all the rest of Campbell County"—and a majority of the votes cast in the total area of the county outside of District One. The total vote cast at the election was 898. Of these, 495 voted to adopt the plan and 403 voted to reject it. On the other hand, the tabulated vote for the two areas reflected a vote in District One of 359 for adoption and 71 opposed, and a vote in the outside area of 136 for adoption and 332 opposed. As can be seen, the proposition carried by a majority of the votes cast in the county as a whole but failed to obtain a majority of the votes cast in each of the two areas. Apparently there was doubt as to the outcome of the election and the chairman of the state committee for the reorganization of school districts requested guidance from the attorney general. Under date of March 31, 1966, the attorney general, among other things, gave it as his opinion that the word "electors" as used in the statute meant those "voting" at the election without regard to areas and as a consequence the reorganization plan had been approved. Opinion 13, Attorney General Opinions, Wyoming, 1966. Shortly thereafter the county superintendent, pursuant to § 21–235, W.S.1957, entered an order reciting in substance that as a result of the adoption of the plan by the election all of the existing school districts in the county were abolished and a new district was formed to be known as "Campbell County Unified School District"; that the boundaries of the new district were coterminous with the boundary lines of the county; and that a meeting would be held on April 26, 1966, for the election of trustees of the newly formed district and for organization of the board of trustees.

Thereupon the plaintiffs filed their complaint in the District Court of Campbell County, generally alleging the facts to be as related above and further alleging that the county superintendent acted arbitrarily, capriciously, and contrary to law in entering the said order for the reason that the proposed reorganization plan failed to receive the vote necessary for its adoption or in the alternative that the election be declared void for the reason that the statute in question was contrary to specified provisions of the constitution in that it was vague and ambiguous and failed to contain adequate standards for the conduct of said election. The relief sought was a declaratory judgment sustaining either of their respective claims and for supplemental relief by way of a temporary restraining order and injunction. For our purposes we need not generally concern ourselves with matters relating to the requested supplemental relief, and we come directly to the action taken by the trial court on the motion of the county superintendent to dismiss the complaint for the reason that it failed to state a claim upon which relief could be granted. The motion was not supported by affidavits or otherwise and it does not indicate the grounds upon which the county superintendent relied. Nevertheless, from the manner in which the case was presented, it appears that it was predicated upon the same grounds advanced in resistance to the motion for a temporary injunction to the effect that plaintiffs had an adequate remedy at law by way of appeal from the order as provided in § 21–238, W.S.1957, or by an action in quo warranto; that the complaint fails to state facts sufficient to entitle plaintiffs to injunctive relief; that § 21–233(b), upon which plaintiff relies, is unconstitutional; and that the plan was adopted at the election by a "majority of the voters" which was all that was required under the provisions of § 21–233(a).

In the order and judgment entered by the trial court granting the motion to dismiss it is recited that the court, in addition to the pleadings, considered the record made, which included a transcript of the testimony and proceedings had upon the hearing for a preliminary injunction and also the stipulation of the parties mentioned above concerning the persons entitled to vote. Consequently, in keeping with Rule 12(b), W.R.C.P., we treat the motion as one for summary judgment. Although

counsel for the plaintiffs, in oral argument, complained that the procedure followed by the trial court deprived the plaintiffs of their day in court in that they were afforded no opportunity to present evidence in support of their claim for declaratory relief, we question that such contention is actually sustained by the record. Furthermore, we think the dispositive question in this case is whether or not the trial court reached the proper legal conclusion on the outcome of the election and we are inclined to agree with the view apparently taken by the trial court that on this issue there was no dispute as to the facts already established by the record; that further inquiry into the facts would be unrewarding; and all that remained to be done was to draw the legal conclusion. Fugate v. Mayor and City Council of Town of Buffalo, Wyo., 348 P.2d 76, 81, 97 A.L.R.2d 243; Forbes Company v. MacNeel, Wyo., 382 P.2d 56, 57.

The trial court in disposing of the motion has not aided us in delineating the grounds upon which its action was taken (see Park County Implement Co. v. Craig, Wyo., 397 P.2d 800, 801), but from the record we gather it was taken primarily on the basis that there was another adequate remedy at law in that an appeal might have been taken under § 21–238, W.S.1957. While we are inclined to agree that plaintiffs, as matters turned out, might have been well advised to have pursued the statutory remedy of appeal in the first instance—which they later did in Case No. 3550 to no avail—we are not persuaded that by the action for declaratory judgment they were foreclosed from obtaining any relief to which they might have been entitled under the provisions of § 21–233(a) and (b).

 We have said several times that the courts are always open to correct arbitrary, capricious, or fraudulent action taken by an administrative official or board, Wyoming Department of Revenue v. Wilson, Wyo., 400 P.2d 144, 145, rehearing denied 401 P.2d 960, and we indicated in Forest Oil Corporation v. Davis, Wyo., 396 P.2d 832, 835, that these matters might be inquired into by a direct action even though there was a statutory method of appeal. We also direct attention to the provision in Rule 57, W.R.C.P., stating that "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." There remains, of course, a wide discretion in the trial court in disposing of such an action but "This discretion is not an arbitrary one, but one which should be based upon sound legal principle." Wyoming Humane Society v. Port, Wyo., 404 P.2d 834, 835. Incidentally, we might say that there this court upheld the denial of relief but the circumstances present in that case and in the instant case are quite distinguishable. The important consideration there was the uncertainty that any pronouncements made upon the facts presented would or could terminate the controversy—a sound legal principle for disallowing resort to the remedy—but that circumstance, as we view it, it is not present here. The real concern of both parties is the meaning of the statute, and, had the trial court reached the opposite result, sufficient was before it to afford complete and effective supplemental relief. Another case rather recently decided by this court, and which is quite pertinent, involved a community college district the formation of which was challenged by resort to an action for declaratory judgment. The decisive question was whether or not the district was legally formed within the meaning of a statute prescribing the manner in which the results of an election on the question should be ascertained. Casper Community College District v. Natrona County High School District, Wyo., 384 P.2d 319. The use of the remedy was not discussed but certainly we gave no indication that the remedy was not appropriate properly to present the narrow question that was before the court. Of course, litigants should bear in mind that resort to this remedy or to a common-law remedy is narrow in scope and does not afford the more complete review ordinarily offered by a statutory appeal, Marathon Oil Company

v. Welch, Wyo., 379 P.2d 832, 836, but that is for them to decide. In this connection counsel for plaintiffs calls our attention to Rule 72.1(c), W.R.C.P., relating to judicial review of administrative action. We need not determine whether the proceeding here falls within the ambit of that rule but, nevertheless, the rule expressly provides that the right of review thereunder does not exclude resort to other appropriate remedies. The committee note bears out the position we take here that a narrow view of the remedy selected is not to be taken because another remedy is available. That, we think, is in keeping with the modern trend of procedural rules. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1266, P. 300 (1958). Furthermore, as the record here discloses, the nub of the controversy could have been decided as expeditiously and perhaps more economically than had an appeal been taken at the outset. Thus, we hold that the remedy selected by plaintiffs was appropriate and that the trial court abused its discretion insofar as the motion was sustained on the ground of availability of another remedy.

From the findings made by the trial court it also appears that a further ground upon which the trial court relied was the contention of the superintendent of schools that the reorganization plan was duly adopted by the election. There being no dispute as to the facts, the answer to the question of whether or not that is true is dependent upon provisions of the statute and that in turn is dependent upon the construction of the statute, it being conceded by both parties with good reason that the statute is ambiguous. Obviously the trial court agreed with the interpretation placed upon the statute by the attorney general to the effect, as previously mentioned, that the language "a majority of the total number of electors of the area" must be construed to mean the number of electors voting at the election. It falls to our unenviable lot to determine whether or not we can also agree.

 At the outset we recognize that considerable support can be found for the reasoning that led to the views of the trial court. In essence the views are based upon the generally prevailing rule that where a statute provides for a vote by "the majority of the electors" or by "the majority of the qualified voters" or by terms of similar import, the results of an election are to be determined by a majority of the votes cast, Town of Pine Bluffs v. State Board of Equalization, 79 Wyo. 262, 333 P.2d 700, 704, unless a contrary legislative intention and purpose is clearly expressed. Dominic v. Davis, Okl. 262 P.2d 143, 147; Laconia Water Company v. City of Laconia, 99 N.H. 409, 112 A.2d 58, 60. See also cases annotated in 131 A.L.R. commencing at page 1393. The genesis of the rule is the common-law principle that qualified voters "absenting themselves from the election are presumed to assent to the expressed will of the majority voting at an election." Miller v. School Dist. No. 3 in Carbon County, 5 Wyo. 217, 39 P. 879, 881; 26 Am.Jur.2d, Elections, § 310, p. 135; and we agree, of course, that opinions of the attorney general are entitled to weight, particularly when those opinions have been weathered by the passage of time. We have observed on several occasions that where the legislature has failed over a long period to make any change in a statute following its interpretation by the attorney general, it amounts to an acquiescence worthy of careful consideration in an inquiry into the intention of that body. In re Sanders' Appeal, 80 Wyo. 265, 341 P.2d 85, 89; State ex rel. Peterson v. Ellsworth, 59 Wyo. 288, 139 P.2d 744, 748; In re Roby, 54 Wyo. 439, 93 P.2d 940, 947. Nevertheless, if we find cogent reasons for disagreement with the interpretation, we are duty bound so to declare.

 In pursuing this matter we need scarcely remind that the fundamental rule in the construction of a statute is to ascertain, if possible, what the legislature intended by the language used, viewed in the light of the objects and purposes to be accomplished. Hoffmeister v. McIntosh, Wyo., 361 P.2d 678, 679, rehearing denied 364 P.2d 823. The words and phrases used

shall be taken in their ordinary sense, § 8–18, W.S.1957, and when a word has a well-settled meaning in the law at the time of usage it will be so understood unless a different meaning is unmistakably intended. Farmers Automobile Inter-Insurance Exchange v. MacDonald, 59 Wyo. 352, 140 P.2d 905, 913; In re Dragoni, 53 Wyo. 143, 79 P.2d 465, 466–467. It is the latter rule that gives us special concern with the result below. While a few cases treat the word "elector" as being synonymous with the word "voter," the large majority distinguish the two and define the word "elector" when standing alone as meaning no more than a person entitled to vote. 44A Words and Phrases, "Voter," p. 13 (1962). That is the meaning which the plaintiffs here attribute to the court's holding in the case of State ex rel. Blair v. Brooks, 17 Wyo. 344, 99 P. 874, 875, 22 L.R.A.,N.S., 478, decided in 1909, and dealing with the vote cast at a regular election upon the adoption or rejection of a proposed constitutional amendment (effected under the provisions of Art. 20, § 1, and Art. 6, § 12, Wyo.Const.). Plaintiffs rely upon the statement by the court in that case, 99 P. at 875, that "the word [electors], according to the definition given it by those who framed the Constitution, means those who are entitled to vote; and, when the Constitution says a majority of the electors, it means, in the absence of any qualified phrase, a majority of those who are entitled to vote." Such statement must be carefully scrutinized and can scarcely be more than dictum as it did not control or furnish a basis for the decision in the case. There were 37,561 votes cast of which 12,160 were in favor of the adoption of the amendment and 1,363 against its adoption, or 13,523 out of 37,561 votes cast at the election, and the holding of the court was, 99 P. at 875, "As it appears that the number of electors who voted at the election and in favor of ratification of the amendment were less than a majority of the electors who voted at the election, it follows that the amendment was not ratified." In 1958 this court, again faced with the matter of the validity of a constitutional amend-

ment, voted at the same time as the conduct of a general election, took cognizance of the almost insurmountable task which would be entailed in determining the number of persons who would be available and entitled to vote and held that the word "elector" as used in Art. 20, § 1, Wyo.Const., would be taken to mean those persons actually voting at the general election. Town of Pine Bluffs v. State Board of Equalization, supra. Thus, that case considerably narrowed the definition set out in the Blair Case.

 Under the general law pertaining to school district elections, § 21–110, W.S.1957, prior registration is not required. Without question, difficulties would be encountered in defining "electors" as used in § 21–233 as meaning no more than a person entitled to vote. Nevertheless, there is a substantial difference in reaching a determination of the number of electors qualified to vote in a statewide election and the number qualified to vote in a local school district election. That the difficulties are not so burdensome in school affairs is indicated to some extent at least by the stipulation of the parties that there were more persons entitled to vote in District One than in the entire area of the county outside of such district. Thus, even though it was considered unreasonable in Pine Bluffs to give to the word "elector" the broad meaning indicated in the Brooks case, that is not to say that the same is true here, having regard for the context in which the word was used. Payne v. City of Laramie, Wyo., 398 P.2d 557, 561. To strike down what clearly appears to be the purpose of both subsections (a) and (b), § 21–233, W.S.1957, on that ground alone is not shown to be warranted. To do so is to bring about the very situation that care was taken to avoid. True, the statute is not artfully drawn, but any fair analysis of its language readily discloses that it was designed to prevent the "electors" of the "most populous district" in the area affected from imposing their will upon the "electors" of the more sparsely populated district or

districts, irrespective of whether or not the latter were satisfied that their school system was suited to their needs. That such a statutory plan is not contrary to the public policy of ·this state is well established. Casper Community College · District v. Natrona County High School District. Wyo., 384 P.2d 319.

■ Furthermore, the setup of the statute and the language employed militate against arriving at the result reached in either the Pine Bluffs case, supra, or the Miller case, supra. In Pine Bluffs we dealt only with the phrase "if a majority of the electors shall ratify the same," Art. 20 § 1, Wyo.Const. In Miller the language was if "the qualified electors of any such school district shall so elect and determine at any regular meeting or at any special meeting," 39 P. at 881. Here the language relating to "electors" is used in an entirely different fashion. The opening language of § 21–233 (a) in essence recites the test used in the foregoing cases to determine the result. It says, "A majority of the votes of the total area involved * * * shall constitute approval." However, it then goes on to say that this is so only "if no district within said area has a majority of the total number of electors of the area." Thus, there is clearly imposed a limitation upon determining the result simply by a "majority" of the voters and that we think is what has been overlooked below. The limitation is in the nature of a proviso and "The true office of a proviso is to restrict or make clear that which has gone before." Welch v. Key, Okl., 365 P.2d 154, 159. To us the meaning of the proviso is clear and the intention of the legislature is clear. If the circumstance is such that the proviso becomes operative the election may not be determined by a "majority" vote in the area as a whole but must be determined in keeping with the requirements of subsection (b). To hold otherwise is to take undue liberty with the statute, and it would be strange indeed if the legislative pronouncement be interpreted so that those within the largest district in the proposed reorganized area could achieve by not voting that which they desired and which would have been unavailable to them had they voted.

■ The impropriety of such an illogical interpretation is also borne out by the contemporaneous construction placed upon the statute by certain of the officials charged with its administration. This is succinctly demonstrated by a statement contained in a handbook published in the year 1959 by the Wyoming School Boards Association, the State Department of Education, the University of Wyoming, and the Wyoming School Study Council, entitled "Words to the Wise." It was there said:

"In order to pass, the plan must receive a majority of votes of residents within the most populous district and a majority of votes of all outside the most populous district."

That this was the interpretation prevailing at the time of the instant election is evidenced by the published notice of election to which we previously referred. Such a contemporaneous construction over a period of years, unless clearly erroneous, must also be given weight. State ex rel. Lynch v. Board of County Commissioners, 75 Wyo. 435, 296 P.2d 986, 988; Hodgell v. Wilde, 52 Wyo. 310, 74 P.2d 336, 339–340, 114 A.L.R. 671; State ex rel. Goshen Irr. Dist. v. Hunt, 49 Wyo. 497, 57 P.2d 793, 799.

■ One further point requires attention. It has been argued here by counsel for the appellee that subsection (b) of the statute is unconstitutional in that it runs afoul of the so-called "one-man one-vote" concept as enunciated in such cases as Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, rehearing denied 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76; Ellis v. Mayor and City Council of Baltimore, D.C.Md., 234 F.Supp. 945, affirmed 4 Cir., 352 F.2d 123; State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249. With respect to this contention we would simply comment that no case has come to our attention extending the doctrine to reach the peculiar circumstances of this

case. But even assuming that there is merit in the argument, we fail to see how it would be of benefit to appellee. Under the interpretation we have given to subsection (a) it would still be the holding that the reorganization plan failed of adoption because it received approval only in the district having a majority of the electors of the area. Furthermore, it is obvious that the provisions of subsection (b) are so interrelated and entangled with (a) that it would be impossible to strike down (b) and leave (a) undisturbed. Local Union No. 415 of International Brotherhood of Electrical Workers v. Hansen, Wyo., 400 P.2d 531, 537.

 In reaching our conclusions in this case we are not unmindful of those that disagree with the policy of the legislature in enacting a statute such as we have here, regarding it as an outmoded deterrent on present-day concepts of furnishing the best educational facilities possible within the limits of the resources available. We may also disagree with that policy. Nevertheless, is must be recognized that in the organization or reorganization of school districts the legislature has plenary power in prescribing the manner in which it shall be done. Unless that power is exercised beyond permissive limits we have no alternative but to uphold what is done. If relief is to come it must come from the legislature, just as it did shortly after our decision in the Casper Community College District case.

The disposition we make of No. 3549 renders moot the appeal in No. 3550.

The judgment entered in No. 3549 is reversed for further proceedings below in keeping with the views herein expressed.

McINTYRE, Justice (concurring specially), with HARNSBERGER, Chief Justice, joining in the special concurrence.

We concur in the result reached in the opinion of Justice Gray. Although there may be some ambiguity in § 21–233, W.S.1957, we think the legislative intent is clear. That intent was to deny a preponderant school district the ability, by virtue of its large voting majority, to unduly overshadow the wishes of smaller school districts. As pointed out by Justice GRAY, it is of course within the prerogative of the legislature to provide any reasonable method it sees fit for the establishment, alteration and consolidation of school districts.

 While the legislative intent in this instance is clear, we wish to erase any possible implication that the word "elector" standing alone always has been or always will be taken to mean a person entitled to vote. Justice GRAY's opinion does not hold the word "elector" means every person qualified to vote at an election, but the purpose of this special concurrence is to remove any possible doubt if there should be in the future any question as to the correct interpretation or meaning to be given the term "elector" as used in our constitution and laws. Until a person qualified to exercise the privilege of voting actually takes advantage of his franchise, he does not become an elector.

This is not in conflict with anything held in previous opinions of this court, particularly State ex rel. Blair v. Brooks, 17 Wyo. 344, 99 P. 874, 875, 22 L.R.A.,N.S., 478; and Town of Pine Bluffs v. State Board of Equalization, 79 Wyo. 262, 333 P.2d 700, 704. The essence of the holdings in those cases is that the number of electors who actually voted in the election would be taken as the number of electors of the state, because it would be almost impossible to determine the actual number of qualified electors in the state at a particular election, and the courts must give some reasonable interpretation to the term "elector."