**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JAMES P. BRADY, STEVEN O.
RICHARDSON, JACK L. ADSIT a/k/a
COMMITTEE OF SPONSORS OF
CONGRESSIONAL TERM LIMITS
REFORM 1996; JEREMY A. C.
WEISSEL; STEPHANIE M. JACOBS;
DEWEY C. HERNANDEZ,

        Plaintiffs-Appellants,

v.

DIANA J. OHMAN, Secretary of State,
State of Wyoming,

        Defendant-Appellee.

No. 97-8081
(D.C. No. 97-CV-016-D)
(District of Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Circuit Judge, **KELLY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

We are here concerned with the constitutionality of certain provisions of the

Constitution for the State of Wyoming relating to initiative and referendum. A copy of

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

Article 3, § 52 of the Wyoming Constitution is attached to this opinion. We are particularly concerned with the constitutionality of § 52(f), which provides, in part, that if the votes in favor of adoption of an initiated measure are in excess of 50% "of those voting in the general election," the measure is enacted. To a lesser degree, perhaps, we are also concerned with that part of § 52(f) which provides that if votes in an amount in excess of 50% "of those voting in the general election" are in favor of rejecting an act referred, the act referred is rejected.

In the 1996 general election in Wyoming there was on the ballot that which we shall refer to as Initiative #1 and Referendum #1. The purpose of Initiative #1 was to encourage passage of an amendment to the United States Constitution setting term limits for members of the United States Congress. Referendum #1 concerned term limits for certain elected state officials.

In the original complaint filed in the instant proceeding the plaintiffs were identified as follows: "James P. Brady, Steven O. Richardson and Jack L. Adsit a/k/a Committee of Sponsors of Congressional Term Limits Reform 1996." The one defendant was Diana J. Ohman, Secretary of State for the State of Wyoming ("Secretary"). The complaint was concerned only with Initiative #1 and not Referendum #1.

It was alleged in the complaint that at the general election in Wyoming in 1996, 105,093 votes were cast in favor of Initiative #1 and 89,018 were cast against the measure, but that the Secretary, despite the fact that Initiative #1 received a majority of the votes

cast by those voting on the measure, declared that Initiative #1 did not pass because of § 52(f) of the Wyoming Constitution. According to the complaint, the Secretary interpreted § 52(f) to mean that in order for Initiative #1 to be enacted it was necessary for the measure to receive a favorable vote "in an amount in excess of fifty per cent (50%) of those voting in the general election," which, in the 1996 general election would require a favorable vote of 107,923, whereas those voting in favor of Initiative #1 were only 105,093. The plaintiffs pointed out in their complaint that § 52(f) was passed in 1968, and, as originally passed, provided that an initiated measure is enacted "[i]f votes in an amount in excess of fifty percent (50%) of those voting in the preceding general election are cast in favor of adoption of an initiated measure . . . ." (Emphasis ours.) In this regard the complaint noted that in 1986, § 52(f) was amended by deleting the word "preceding" from the original 1968 amendment and the plaintiffs asserted that the 1986 deletion of the one word – preceding – renders § 52(f) in violation of the United States Constitution. (In other words, § 52(f), as such appeared in the 1968 amendment, was not subject to any constitutional infirmity.)[1] The gist of the complaint was that the defendant by declaring that Initiative #1 was not enacted violated plaintiffs' First and Fourteenth Amendment rights. By way of relief, plaintiffs sought a declaration that Initiative #1 had passed and an

---

[1]Under § 52(f) as originally passed in 1968, an initiated measure had a better chance for getting voter approval if it were on the ballot in a presidential election than if it were on the ballot in an "off-year" non-presidential election, since more votes are always cast in a presidential election than in a non-presidential general election.

order directing the Secretary to declare it so enacted.

In an amended complaint three other individuals were added as party plaintiffs. Each was identified as having voted in the 1996 general election but having "abstained from casting a vote on Initiative #1." The amended complaint also added a challenge to the Secretary's action in connection with Referendum #1 and indicated, but didn't say, that the additional plaintiffs had also abstained from voting on Referendum #1. As concerns Referendum #1, it was alleged that 104,544 were cast in favor of the referendum and 90,138 were cast against passage of the referendum. It was then alleged that the defendant's interpretation of § 52(f) was that in the case of a referendum, as in the case of any initiated measure, it was also not deemed to have been passed unless votes in excess of 50% of those voting in the general election (in our case 107,923 votes) were in favor of passage. Otherwise, the amended complaint basically paralleled the original complaint, i.e., plaintiffs' First and Fourteenth Amendment rights were violated by the Secretary's interpretation of § 52(f) of the Wyoming Constitution.

After an answer to the amended complaint was filed, both the plaintiffs and the Secretary filed motions for summary judgment, supported by briefs and affidavits. After hearing, the district court denied plaintiffs' motion and granted the Secretary's motion. Plaintiffs appeal the judgment entered. We affirm.

At the outset, we reject any suggestion that because the United States Constitution does not require the several states to provide for the initiative and referendum process, that

a state, if it does so provide, may condition its use by impermissible restraints on First Amendment activity. Rather, it is apparently agreed, that if a state decides to afford its citizenry with the initiative and referendum process, it must do so in a manner consistent with the United States Constitution. *Meyer v. Grant,* 486 U.S. 414, 420 (1988), affirming our en banc opinion in *Grant v. Meyer,* 828 F.2d 1446 (10th Cir. 1987).

In *Burdick v. Takushi,* 504 U.S. 428, 432 (1992), the Supreme Court disavowed "the erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny." In that connection the Court then went on to speak as follows:

> Instead, as the full Court agreed in *Anderson,* 460 U.S., at 788-789; *id.,* at 808, 817 (Rehnquist, J., dissenting), a more flexible standard applies. A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.,* at 789; *Tashjian, supra,* at 213-214.
> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed,* 502 U.S. 279, 289 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to

> justify" the restrictions. *Anderson,* 460 U.S., at 788; see also *id.,* at 788-789, n. 9. We apply this standard in considering petitioner's challenge to Hawaii's ban on write-in ballots.

*Id.* at 434.

In the district court, though not in this court, the plaintiffs suggested that the correct interpretation of § 52(f) was that, in order for an initiated measure to be enacted, it was only necessary that it receive a majority of the votes cast in connection with the initiated measure. Such an interpretation is in our view at odds with the plain language of § 52(f), which provides that "[i]f votes in an amount in excess of fifty percent (50%) <u>of those voting in the general election</u> are cast in favor of adoption of an initiated measure, the measure is enacted." (Emphasis ours.) Further, in *State ex rel. White v. Hathaway,* 478 P.2d 56 (Wyo. 1970), the Wyoming Supreme Court held that a provision of the Wyoming Constitution, calling for a "majority of electors" to ratify amendments thereto, required a majority of all electors to adopt the amendment and not merely a majority of those actually voting on the particular amendment under consideration, stating, specifically that "the word 'electors' meant 'the number of electors who actually voted in the election'." *Id*. at 57. *See also Town of Pine Bluffs v State Board of Equalization,* 79 Wyo. 262, 333 P.2d 700 (1958); *State ex rel. Blair v. Brooks*, 17 Wyo. 344, 99 P. 874 (1909).

On appeal, plaintiffs' only argument is that the provisions of § 52(f) which state that in order for an initiative measure to be enacted, it must receive a favorable vote in excess of 50% "of those voting in the general election," are unreasonable and violative of

their First and Fourteenth Amendment rights. Specifically, in his brief, counsel states that "[t]he only issue for review . . . is whether the district court properly found that Article III, section 52(f) of the Wyoming Constitution does not violate the voting rights of the citizens of Wyoming as protected by the Equal Protection Clause and the First Amendment of the United States." In our view, the district court did not err in so holding. Although there are a plethora of cases concerning "voting rights," our attention has not been drawn to any case involving a constitutional challenge to the voting requirements contained in § 52(f). In any event, we are not persuaded by counsel's primary argument in this court that, under § 52(f), the voter who abstains, for whatever reason, from voting on an initiated measure, is somehow deemed, by the state, to be voting "no" on the measure, and that such violates his right "not to vote." On the contrary, we believe the State of Wyoming has a legitimate and reasonable interest in seeing that an initiated measure, for example, is not enacted into law unless it is approved by a majority of those voting in the general election in which the initiated measure is being considered. If Wyoming wants to make it "harder," rather than "easier," to make laws by the initiated process, such is its prerogative, and, in our view, does not violate the First Amendment. A state understandably wants to minimize abuse of the initiated process and make it difficult for a relatively small special interest group to enact its views into law through an initiated measure.

In granting the defendant's motion for summary judgment, the district court concluded that "the state and its citizens have an important if not compelling interest in

assuring that the initiative or referendum is supported by more than the majority of those voting upon the particular initiative or referendum." We agree. In support of its conclusion, the district court relied on *Gordon v. Lance,* 403 U.S. 1 (1971), where the Supreme Court held that a West Virginia constitutional and statutory requirement that political subdivisions may not incur bonded indebtedness or increase tax rates beyond those established by the state constitution without the approval of 60% of the voters in a referendum election was constitutional.

The primary emphasis by the plaintiffs in this court relates to Initiative #1. However, Referendum #1 is also involved. § 52(f) provides that if votes in excess of 50% of those voting in a general election are cast in favor of rejection of an act referred, the act is rejected. That, however, is not our case. Votes in favor of rejection of the act referred were <u>less</u> than 50% of those voting in the general election. So, the referred act was not rejected. However, it was apparently the Secretary's understanding of Wyoming law that the referred act did not become law unless a majority of those voting in the general election favored the act referred. Whether that is a correct understanding of Wyoming law is not for us to decide. If it is, such, in our view, does not offend the United States Constitution. We are advised that plaintiffs brought a separate action in the Wyoming courts challenging the Secretary's reading of § 52(f). We are not advised as to the outcome of that proceeding.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

ATTACHMENT
Initiative and Referendum
## § 52.  Initiative and referendum.
(a) The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum.

(b) An initiative or referendum is proposed by an application containing the bill to be initiated or the act to be referred.  The application shall be signed by not less than one hundred (100) qualified voters as sponsors, and shall be filed with the secretary of state.  If he finds it in proper form he shall so certify.  Denial of certificate shall be subject to judicial review.

(c) After certification of the application, a petition containing a summary of the subject matter shall be prepared by the secretary of state for circulation by the sponsors.  If signed by qualified voters, equal in number to fifteen per cent (15%) of those who voted in the preceding general election and resident in at least two-thirds (2/3) of the counties of the state, if[sic] may be filed with the secretary of state.

(d) An initiative petition may be filed at any time except that one may not be filed for a measure substantially the same as that defeated by an initiative election within the preceding (5) years.  The secretary of state shall prepare a ballot title and proposition summarizing the proposed law, and shall place them on the ballot for the first statewide election held more than one hundred twenty (120) days after adjournment of the legislative session following the filing.  If, before the election, substantially the same measure has been enacted, the petition is void.

(e) A referendum petition may be filed only within ninety (90) days after adjournment of the legislative session at which the act was passed, except that a referendum petition respecting any act previously passed by the legislature may be filed within six months after the power of referendum is adopted.  The secretary of state shall prepare a ballot title and proposition summarizing the act and shall place them on the ballot for the first statewide election held more than one hundred eighty (180) days after adjournment of that session.

(f) If votes in an amount in excess of fifty percent (50%) of those voting in the general election are cast in favor of adoption of an initiated measure, the measure is enacted.  If votes in an amount in excess of fifty percent (50%) of those voted[sic] in the general election are cast in favor of rejection of an act referred, it is rejected.  The secretary of state shall certify the election returns.  An initiated law becomes effective

ninety (90) days after certification, is not subject to veto, and may not be repealed by the legislature with two (2) years of its effective date. It may be amended at any time. An act rejected by referendum is void thirty (30) days after certification. Additional procedures for the initiative and referendum may be prescribed by law.

(g) The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, enact local or special legislation, or enact that prohibited by the constitution for enactment by the legislature. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety. (As added by Laws 1967, Senate Joint Resolution No. 3, p. 729; as amended by Laws 1985, House Joint Resolution No. 3, p. 550.)